[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10582
_____

D.C. Docket No. 1:14-cv-00314-CG-M


MARGARET C. RENFROE,

Plaintiff-Appellant,

versus

NATIONSTAR MORTGAGE, LLC,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(May 12, 2016)

Before WILSON and MARTIN, Circuit Judges, and RODGERS,[*] District Judge.

MARTIN, Circuit Judge:

---

[*] Honorable Margaret C. Rodgers, United States District Chief Judge for the Northern District of Florida, sitting by designation.

Margaret Renfroe is a retired bank manager who claims that her mortgage payment incorrectly increased after Nationstar Mortgage, LLC ("Nationstar") began servicing her loan. She wrote Nationstar to ask why her payment had gone up, but Nationstar gave no explanation. Instead, it said her account was correct and attached some loan documents. Mrs. Renfroe sued Nationstar under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., a consumer-protection statute geared toward mortgagors. Nationstar succeeded in getting the suit dismissed, after which Mrs. Renfroe appealed to this Court. Because the District Court improperly elevated Nationstar's allegations over those of Mrs. Renfroe at the motion-to-dismiss stage, and because Mrs. Renfroe adequately pleaded damages, we REVERSE and REMAND for proceedings consistent with this opinion.

## I. BACKGROUND

### A.   MORTGAGE SERVICING ERROR

In 2006, Mrs. Renfroe refinanced her mortgage with Wilmington Finance, Inc. at a fixed rate of 7.75 percent for a 30-year term, with monthly payments of $998.68. After several years, servicing of the loan was transferred to Nationstar. Mrs. Renfroe alleges that after this transfer, her monthly payments increased by about $100.

2

Mrs. Renfroe says she repeatedly called Nationstar seeking an explanation, but got none. She suspected that Nationstar was either mistakenly charging her for property taxes or had miscalculated her loan amortization schedule. In September 2013, Mrs. Renfroe refinanced her mortgage with Regions Bank, which ended Nationstar's servicing of the loan.

## B.    THE RESPA LETTERS

On June 17, 2014, Mrs. Renfroe sent Nationstar a letter pointing out the increase in payment, as well as her suspicions about its cause. She requested an investigation, a "detailed explanation," certain account information, and a refund if appropriate. She attached several loan documents in support of her letter. This "notice of error" letter triggered certain rights Mrs. Renfroe possesses under RESPA. See 12 U.S.C. § 2605(e).

On June 26, 2014, Nationstar responded to Mrs. Renfroe's letter. It denied any error, stating that the "loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriate to its status."[1] Nationstar also represented that several loan documents were enclosed, but none of these enclosures are contained in the record. Mrs. Renfroe had not requested many of the documents that Nationstar listed, and some were even

---

[1] Of course, Nationstar had stopped servicing Mrs. Renfroe's mortgage nearly a year before it sent this response, so at least the latter part of Nationstar's statement was not accurate.

3

duplicates of the documents that <u>she</u> had sent to <u>Nationstar</u>.  While Nationstar described the kind of information that generic documents of these types might contain, its letter said nothing about the substantive content of the documents and gave no explanation for Mrs. Renfroe's predicament.

## C.    PROCEDURAL HISTORY

A month later, Mrs. Renfroe filed this suit.  For our purposes here, she claimed that Nationstar had violated RESPA by failing to reasonably investigate the error she pointed out in her account, by failing to adequately respond to her notice of error, and by failing to refund her overpayments.  Nationstar moved to dismiss Mrs. Renfroe's amended complaint for failure to state a claim, arguing that it had satisfied its obligations under RESPA and that Mrs. Renfroe had not adequately pleaded damages.  Mrs. Renfroe responded that Nationstar had not complied with RESPA, and this failure damaged her.

The Magistrate Judge recommended granting Nationstar's motion to dismiss.  The judge reasoned that Nationstar complied with RESPA because it "explain[ed] that 'related documents [to the loan] were reviewed.'"  Although those documents were nowhere in the record, the Magistrate Judge concluded that "[s]uch an explanation satisfies RESPA."  Alternatively, the judge stated that Mrs. Renfroe had not pleaded damages under RESPA.  First, because the overpayments occurred before Mrs. Renfroe wrote to Nationstar, the judge found that any such

damages "sound in breach of contract . . . and not in a RESPA violation." Second, the Magistrate Judge rejected the idea that Mrs. Renfroe could count the cost of sending her "notice of error" letter as damages. Finally, the judge stated that no statutory "pattern or practice" damages could accrue without actual damages.

The District Court overruled Mrs. Renfroe's objections to the Magistrate Judge's report, adopted it, and dismissed the complaint without prejudice. Mrs. Renfroe timely appealed to this Court.

## II. STANDARD OF REVIEW

"We review de novo the district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008) (per curiam). To survive a motion to dismiss, a complaint need only present sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 1965, 1974 (2007). The complaint must "raise a right to relief above the speculative level," but it need not contain "detailed factual allegations." Id. at 555, 127 S. Ct. at 1964–65.

## III. DISCUSSION

We consider two aspects of Mrs. Renfroe's claim: (1) whether she stated a RESPA violation, and (2) whether she stated damages related to that violation.

5

Guiding this analysis is the principle that RESPA, as a remedial consumer-protection statute, should be construed liberally in order to best serve Congress's intent.  Cf. Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998).

A.    RESPA VIOLATION

Nationstar argues that Mrs. Renfroe failed to allege a RESPA violation. RESPA requires mortgage servicers like Nationstar to reasonably respond to notices of error like the one Mrs. Renfroe sent.  Basically, a servicer must respond by fixing the error, crediting the borrower's account, and notifying the borrower; or by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower.  See 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1)(i).  In 2013, the Consumer Financial Protection Bureau promulgated new regulations that clarified servicers' obligations after receiving a notice of error:

> [A] servicer must respond to a notice of error by either:
>
> > (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> >
> > (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a

6

statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i) (emphasis added).  Nationstar says it chose and complied with the second option.  Thus, Nationstar purports to have: (1) conducted a reasonable investigation; (2) concluded that there was no error based on that investigation; (3) given Mrs. Renfroe a written statement of "the reason or reasons for this determination"; and (4) facilitated Mrs. Renfroe's access to further information.

In her amended complaint, Mrs. Renfroe alleged that Nationstar violated RESPA because it failed to provide "any explanation" for its conclusion; failed to provide "an explanation of whether it was charging . . . property taxes"; failed to provide "an explanation of how payments were calculated and which amortization schedule was used"; and failed to "conduct any reasonable investigation."  Instead, Mrs. Renfroe asserts that Nationstar "provided boilerplate statements and objections which do not apply to Mrs. Renfroe's letter, provided information and documents not requested[,] and without explanation[] stated the general conclusion that it did nothing wrong in servicing the account."  Her allegations are supported by Nationstar's response letter.  In its letter, Nationstar simply concluded, "[T]he above-mentioned loan and related documents were reviewed and found to comply

7

with all state and federal guidelines that regulate them. . . . [W]e did review the account, and all transactions appear to be correct from our records review." Nationstar acknowledged at oral argument that its letter did not explain to Mrs. Renfroe <u>why</u> the two errors she suspected were not present, and did not explain <u>why</u> her payment had increased.  It just said there was no error and pointed to attachments.

In sum, Mrs. Renfroe has plausibly alleged: (1) that Nationstar did not offer a "written explanation" stating the "reason or reasons for [its] determination," in violation of 12 U.S.C. § 2605(e)(2)(B) and 12 C.F.R. § 1024.35(e)(1)(i)(B); (2) that this failure indicated Nationstar's investigation was unreasonable, in violation of 12 U.S.C. § 2605(e)(2)(B) and 12 C.F.R. § 1024.35(e)(1)(i)(B); and (3) that Nationstar's unreasonable investigation prevented it from discovering and appropriately correcting the account error, in violation of 12 U.S.C. § 2605(e)(2)(A) and 12 C.F.R. § 1024.35(e)(1)(i)(A).  For these reasons, we conclude that Mrs. Renfroe has stated a RESPA violation.

Nationstar resists this outcome by saying that we should elevate its own conclusions—taken from the response letter and its generic descriptions of documents that are not in the record—over Mrs. Renfroe's allegations.  This dangerous argument turns the standard for considering a Federal Rule of Civil Procedure 12(b)(6) motion on its head.  In reviewing Rule 12(b)(6) motions, courts

8

are bound to accept the plaintiff's allegations as true and to construe them in the light most favorable to her.  Timson, 518 F.3d at 872.  Nationstar asks us to do the opposite.  Nationstar suggests we should accept its contrary allegations—that it conducted a reasonable investigation into Mrs. Renfroe's account and found no error—and then to grant its motion to dismiss on that basis.  We decline to do that.

Nationstar wrongly relies on Griffin Industries, Inc. v. Irvin, 496 F.3d 1189 (11th Cir. 2007).  That case says, "[W]hen the exhibits [attached to the complaint] contradict the general and conclusory allegations of the pleading, the exhibits govern."  Id. at 1206.  The Griffin principle applies if the exhibits "plainly show" that the complaint's allegations are untrue by providing "specific factual details" that "foreclose recovery as a matter of law."  Id. at 1205–06 (quotation omitted).  Nationstar's response letter does not contain specific factual details that foreclose Mrs. Renfroe's recovery as a matter of law.  Rather, it contains concededly unexplained conclusions and generic descriptions of documents that are not in the record.[2]  We cannot take Nationstar's word that these mystery documents support its conclusion and throw out Mrs. Renfroe's case on that basis.  If servicers want to try to shelter behind their RESPA response letters, they must provide a more comprehensive, supported explanation of their findings, or else introduce the

---

[2] We are not aware of any precedent—and Nationstar has identified none—extending the Griffin principle from facts in an attachment itself to an attachment's generic descriptions of the contents of other, undisclosed documents.  Such a rule would essentially allow the introduction of hearsay at the motion-to-dismiss stage, because it would force courts to accept secondhand descriptions of documents without any way of assessing the validity of those descriptions.

supporting attachments into the record and convert their motions to dismiss into motions for summary judgment.

B.    DAMAGES

Nationstar argues in the alternative that Mrs. Renfroe failed to allege damages.  RESPA makes violators liable to individual borrowers for "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section."  12 U.S.C. § 2605(f)(1).  We join our sister Circuits in recognizing that damages are an essential element in pleading a RESPA claim.  See, e.g., Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 523 (10th Cir. 2013); Hintz v. JPMorgan Chase Bank, N.A., 686 F.3d 505, 510–11 (8th Cir. 2012).  And we conclude that Mrs. Renfroe has sufficiently pleaded damages at this stage.

*1.    Actual Damages*

We begin by considering whether Mrs. Renfroe pleaded "actual damages."  RESPA states that actual damages arise "as a result of" the servicer's alleged violation.  12 U.S.C. § 2605(f)(1)(A).  This language suggests there must be a "causal link" between the alleged violation and the damages.  Cf. Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc) (interpreting a similarly phrased damages provision in a consumer-protection statute).  Mrs.

10

Renfroe alleged she sustained actual damages when Nationstar failed to refund her mortgage overpayments.  We conclude that this harm has a sufficient causal link to Nationstar's alleged violation.

Mrs. Renfroe alleged that Nationstar's failure to comply with RESPA—by not discovering and refunding her overpayments—resulted in actual damage to her. Accepting these allegations, if Nationstar had heeded its statutory duties, Mrs. Renfroe would've gotten a refund.[3]  Nationstar argues that this damages theory fails because Mrs. Renfroe's damages occurred before she sent her notice of error. Nationstar's timing argument ignores the fact that a notice of error triggers present RESPA obligations with respect to past error.  See 12 U.S.C. § 2605(e) (creating a "[d]uty of loan servicer to respond to borrower inquiries," including by crediting erroneous charges).  This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.  See id. § 2605(e)(2).  Mrs. Renfroe alleged that Nationstar failed to comply with RESPA after she sent a notice of error, and that this failure harmed her.

Beyond that, accepting Nationstar's timing argument would mean gutting RESPA.  Nationstar acknowledged at oral argument that borrowers can send

---

[3] This allegation implies that, had Nationstar conducted a reasonable investigation, it would have discovered loan overpayments.  We take Nationstar's point that Mrs. Renfroe is not entitled to a refund if there was not in fact an account error.  And Nationstar can certainly try to prove as much at a later stage of this case.  But, as discussed earlier, the motion-to-dismiss standard prevents us from accepting Nationstar's unsupported assertion that there was no error.

notices of error only <u>after</u> an error has occurred.  We can hardly ask borrowers to foretell errors that haven't happened yet.  If RESPA reached only future harm, as Nationstar claims, § 2605(e)(2)(A)'s directive that servicers "make appropriate corrections in the account of the borrower [when there is an error], <u>including the crediting of any late charges or penalties</u>," would be meaningless because it could always be circumvented.  That is, a servicer notified of an account error could always avoid RESPA liability just by claiming it thought there was no error and correcting the error going forward.  According to Nationstar, a RESPA cause of action would not accrue in this situation—despite the abusiveness of the tactic.  We reject such a cramped reading of RESPA.  When a plaintiff plausibly alleges that a servicer violated its statutory obligations and as a result the plaintiff did not receive a refund of erroneous charges, she has been cognizably harmed.

### 2.    *Pattern-or-Practice Damages*

The District Court concluded that Mrs. Renfroe could not recover statutory pattern-or-practice damages because she had not pleaded actual damages.[4]  In light of our holding that Mrs. Renfroe did plead actual damages, this conclusion cannot stand.

---

[4] The District Court apparently relied on the statutory language, which describes pattern-or-practice damages as "additional."  12 U.S.C. § 2605(f)(1)(B).  This Court has not addressed in a published opinion whether RESPA pattern-or-practice damages are available in the absence of actual damages, and our unpublished opinions have used conflicting language.  The question is not now before us, but we observe without ruling on the question, that the use of "additional" seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages.

The District Court also stated that "submitting one additional allegedly deficient [servicer ]response [letter] is insufficient to establish a pattern or practice warranting statutory damages."  RESPA pattern-or-practice damages are not clearly defined by this Court's precedent.  In another context, a "pattern or practice" has been defined as a "standard operating procedure—the regular rather than the unusual practice."  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336, 97 S. Ct. 1843, 1855 (1977).  Thus, the Tenth Circuit has held that a plaintiff must allege some RESPA violations "with respect to other borrowers."  Toone, 716 F.3d at 523.  "Though there is no magic number of violations that create a 'pattern or practice of noncompliance,' courts have held that two violations of RESPA are insufficient to support a claim for statutory damages."  Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 445 (E.D.N.Y. 2013).  On the other hand, allegations of five RESPA violations have been deemed adequate to plead statutory damages.  Ploog v. HomeSide Lending, Inc., 209 F. Supp. 2d 863, 868–69 (N.D. Ill. 2002).

Here, Mrs. Renfroe alleged four other RESPA violations, for a total of five. Mrs. Renfroe specifically alleged that: (1) "Nationstar's practice is to provide . . . readily available documents in response to a [notice of error], regardless of the individual requests made"; (2) "[Nationstar's] practice is to use the standardize[d] form-based response letter, like the one used to respond to Renfroe's request,

13

which contains boilerplate objections that are not tailored to the . . . individual request"; (3) "On at least five separate occasions, including Mrs. Renfroe's case, Nationstar has used the same generic form letters to respond to [notices of error]. These form letter[s] were sent [to] borrowers in Birmingham, Alabama; Mobile[,] Alabama[;] and Lexington, Maryland.  In each situation, Nationstar's form and generic response failed to address the specific issues addressed in the borrower's letter and violated RESPA Section 2605(e)"; and (4) Nationstar's patently incorrect statement that Mrs. Renfroe's loan would continue to be serviced showed that a form letter was used.

Nationstar attacks Mrs. Renfroe's allegations regarding the other borrowers. It criticizes her for "not disclos[ing] the identity of [these borrowers], the date of the letters, or whether [these borrowers'] requests were similar to hers."  Here again, Nationstar jumps ahead to a later stage of this case, ignoring the motion-to-dismiss standard.  "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.  Disclosing the identities of other borrowers, the dates of the letters, and the specifics of their inquiries is not a prerequisite to pleading statutory damages, and Nationstar cites no case saying otherwise.  It is enough, as Mrs. Renfroe did here, to plausibly allege "a pattern or practice of noncompliance with the requirements of [RESPA]."  12 U.S.C. § 2605(f)(1)(B).

14

## IV.  CONCLUSION

Nationstar seeks the benefits of a motion to dismiss without abiding by the rules governing that motion.  Nationstar asks this Court to allow its allegations about documents that are not in the record to "trump" Mrs. Renfroe's allegations. It asks this Court to require Mrs. Renfroe to plead specifics about every time that Nationstar allegedly violated another borrower's RESPA rights.  These requests are not compatible with a motion to dismiss.  Because we conclude that Mrs. Renfroe adequately pleaded a RESPA violation as well as actual and statutory damages, we reverse and remand to the District Court for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**