[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17571
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-00612-KD-M

SCOTT J. MOORE,
SHELLEY S. MOORE,

Plaintiffs-Appellants,

versus

SETERUS, INC.,
FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Scott J. Moore and Shelley S. Moore (collectively, "the Moores") appeal the

district court's grant of summary judgment in favor of Seterus, Inc. ("Seterus") and

the Federal National Mortgage Association ("Fannie Mae") on the Moores' claims

for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Real Estate Settlement Procedures Act ("RESPA") and for breach of contract under Alabama law. The Moores' claims stem from a demand letter sent by Seterus for past due mortgage payments, late fees, and other fees, and Seterus's response to a request for information sent by the Moores On appeal, the Moores argue that the district court erred in granting summary judgment on their claims. After careful review, we affirm.

The essential, undisputed facts are these. In 2007, the Moores obtained a 30-year home mortgage loan from SunTrust Mortgage, Inc. ("SunTrust"). The mortgage provided that payments should be applied as follows:

> Except as otherwise described in this Section . . . , all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. ["Funds for Escrow Items"] Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

> If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

It expressly authorized the collection of late charges, attorney's fees, property inspection fees, and valuation fees and did not prohibit the collection of any other fees.   Regarding remedies, the mortgage required the lender to give notice prior to acceleration of the debt.  It also required that the lender give the borrower written notice if the lender invoked the power of sale.

The Moores fell behind on their monthly mortgage payments around May 2011, and SunTrust refused their attempt to pay a lump sum toward the arrearage later that year.   In order to avoid foreclosure, the Moores filed Chapter 13 bankruptcy in December 2011.  The Moores made monthly mortgage payments for the pre-petition amount due to SunTrust in January, February, March, and May 2012.[1]   Before SunTrust transferred the mortgage to Fannie Mae with Seterus acting as servicer in June 2012, three of the four payments were credited to the Moores' account for the past-due installments for May, June, and July 2011. Seterus eventually applied the May 2012 payment to the Moores' account for the August 2011 installment.  Seterus applied a June 2012 mortgage payment to the September 2011 installment and an August 2012 payment to the October 2011 installment.

---

[1] SunTrust payment records indicate that the Moores also paid smaller sums of $741.58 and $172 in March 2012.  However, Shelley Moore did not testify about these payments, and it appears that the amounts applied to escrow, late charges, and property inspections fees, rather than mortgage interest.

In June 2012, SunTrust filed a Proof of Claim in the bankruptcy action and identified over $13,000 as the total amount necessary to cure the default as of the petition date in December 2011.  That amount included eight unpaid monthly mortgage payments, late charges, attorney fees, advertisement and title expenses, property inspection fees, escrow shortages, mail fees, and the fee for filing the Proof of Claim.  SunTrust's claim was paid from the bankruptcy plan in October 2012, and the funds were applied to nine past-due interest payments from November 2011 through July 2012.  Seterus did not apply the claim funds to fees, expenses, or attorney's fees and costs, and those charges were still owed.  The Moores' bankruptcy was dismissed without a discharge in March 2015.

By April 2015, the Moores were seven payments behind on their mortgage. In April 2015, Seterus sent the Moores a demand letter for the seven past-due payments, late charges, property inspection fees, and legal, publication and title fees owed, totaling over $14,000, to be paid by May 12, 2015 to cure the default and avoid acceleration and foreclosure.  The letter stated:

> If full payment of the default amount is not received by us in the form of a certified check, cashier's check, or money order on or before the Expiration Date, we will accelerate the maturity date of your loan and upon such acceleration the ENTIRE balance of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable.
>
> Failure to cure the default will result in acceleration of the sums secured by the mortgage and may result in the sale of the premises.

4

. . .

IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS. FORECLOSURE PROCEEDINGS WILL NOT BE COMMENCED UNLESS AND UNTIL ALLOWED BY APPLICABLE LAW. ADDITIONAL FEES SUCH AS FORECLOSURE COSTS AND LEGAL FEES MAY BE ADDED PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

The Moores timely paid the demand amount on May 7, 2015, and Seterus applied the amount to the seven past due mortgage payments, the May 2015 mortgage payment that had become due on May 1, the forthcoming June 2015 mortgage payments, and late charges.  The funds were not applied to the legal, publication, title, or property inspection fees, and those charges were still owed.

In June 2015, the Moores sent Seterus a Qualified Written Request and Notice of Servicing Errors ("QWR/NSE"), specifying errors in the application of the payments and contesting the accuracy of the amount in the demand letter. After receiving the QWR/NSE on June 8, 2015, Seterus acknowledged receipt of the letter on June 12, 2015.  On June 24, 2015, Seterus sent the Moores escrow statements and a refund check of over $6,000 from the escrow account.  On July 20, 2015, Seterus informed the Moores that it needed additional time to complete the investigation of their QWR/NSE.  Seterus responded to the QWR/NSE on

5

August 6, 2015, acknowledging the surplus escrow funds but finding no error in the April 2015 demand letter. It explained how the May 2015 payment was applied and provided a payment history from SunTrust and a Seterus file that detailed charges assessed on the loan through February 2015.

In December 2015, the Moores filed this action. The complaint alleged, in relevant part, that the Appellees breached the mortgage contract, violated RESPA with their response to the QWR/NSE, and violated the FDCPA by communicating misleading information about a debt and threatening to foreclose while collecting a debt. The district court granted summary judgment in favor of the Appellees on those claims.

We review a district court's order granting summary judgment de novo, applying the same standard as the district court. Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003). We view the material presented and draw all factual inferences in the light most favorable to the nonmoving party. Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1161–62 (11th Cir. 2006). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing

6

that the jury could reasonably find for that party." Brooks, 446 F.3d at 1162 (quotation omitted).

The district court did not err in granting summary judgment on the Moores' FDCPA claim. The FDCPA generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and the use of "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f. We evaluate the circumstances giving rise to an alleged FDCPA violation from the perspective of the least sophisticated consumer. Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1258–59 (11th Cir. 2014). The least sophisticated consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1194 (11th Cir. 2010). That standard protects "naïve consumers" and "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." Id. (quotations omitted).

First, the Moores argue that the Appellees sought to collect a debt they were not authorized to collect, in violation of § 1692f(1), and the debt amount was a false, deceptive or misleading statement, in violation of § 1692e, because the April 2015 demand letter included fees that the Moores had already paid. We disagree.

7

The Moores point out that 2015 demand letter included fees listed in SunTrust's 2012 Proof of Claim, and they fully paid the Proof of Claim. But the undisputed record shows that the Moores had <u>more</u> past-due interest payments than were listed in the Proof of Claim, and the funds associated with the Proof of Claim were applied to as many past-due interest payments as possible, rather than to the fees listed in the Proof of Claim. Accordingly, the fees were still due and owing, and Seterus was authorized to collect the debt. Moreover, because the demand amount did not include fees that the Moores did not owe, the demand total was not false, deceptive or misleading.

The Moores also argue that SunTrust and Seterus failed to apply two of their post-petition mortgage payments to the loan, citing deposition testimony of Seterus representative James Foster, in which Foster could not explain why the payments to SunTrust were not applied to the loan. Again, we disagree. Although Foster could not explain the SunTrust payment charts, a review of the charts themselves reveals that all four post-petition mortgage payments to SunTrust were applied to the loan and advanced the loan's due date. On this undisputed record, Foster's testimony alone was not "sufficient evidence favoring the [Moores] for a reasonable jury to return a verdict in [their] favor." Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted).

8

Likewise, we are unconvinced that the April 2015 demand letter violated § 1692e(2)(A)'s prohibition against "false representation of the character, amount, or legal status of [the] debt" because it characterized the demand amount as the "amount due" that would "cure the default." The Moores contend that the total amount in the demand letter did not "cure the default" because Seterus did not apply the funds to the fees listed in the letter, and they still faced default and foreclosure due to the outstanding fees. But undisputed evidence in the record shows that the amount in the demand letter was the amount due and owing at the time that the letter was sent, even if the payment was applied to a May 2015 interest payment that became due after the letter was sent and a forthcoming June 2015 interest payment. Furthermore, undisputed evidence showed that Seterus does not foreclose based on unpaid fees, so the Moores would not have faced foreclosure based solely on the fees that were not paid.

Nor are we persuaded by the Moores' assertion that the demand letter violated § 1692e(5)'s prohibition against "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken" when it stated that Seterus may commence foreclosure proceedings without further notice if the default was not timely cured. The Moores point out that the mortgage contract requires the lender to give a copy of a written notice to the borrower if the lender invokes the power of sale, and it argues that this provision precluded Seterus from

9

commencing foreclosure proceedings "without further notice." However, the demand letter said that foreclosure proceedings would not be commenced "unless and until allowed by applicable law," which indicated that the foreclosure proceedings would not begin contrary to the contract's terms. Thus, as for the Moores's claim that the least sophisticated consumer would read the letter to threaten immediate sale of their home without any notice, a careful reading of the entire letter shows that Seterus would not have foreclosed without providing what was required under the mortgage contract and state law. LeBlanc, 601 F.3d at 1194. For these reasons, the district court did not err in granting summary judgment on the Moores' FDCPA claim.

The district court also properly granted summary judgment on the Moores' RESPA claim. RESPA requires mortgage servicers to reasonably respond to a QWR/NSE like the one sent by the Moores. Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1244 (11th Cir. 2016). A servicer must respond by fixing the error, crediting the borrower's account, and notifying the borrower; or by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower. Id. The Moores only argue on appeal that Seterus's investigation was unreasonable because a reasonable investigation would have revealed that they paid fees in the Proof of Claim twice and SunTrust did not apply all of their mortgage payments to the loan. But as we've already addressed, the

10

undisputed record shows that the Moores did not pay fees twice, and the mortgage payments were applied to the loan. Thus, there is nothing in the record to suggest that Seterus conducted an unreasonable investigation. Id. Because there was no genuine dispute as to whether the Moores violated RESPA, we need not address whether the record supported their claim for actual damages under the statute.

Finally, the district court did not err by granting summary judgment on the Moores' state law breach-of-contract claim. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala. 2009) (citation omitted). On appeal, the Moores only argue that the Appellees breach the mortgage by collecting debts previously paid. But as we've said, the undisputed record shows that the Appellees did not attempt to collect debts that the Moores had paid.

Accordingly, we affirm the district court's grant of summary judgment in favor of Seterus and Fannie Mae.

**AFFIRMED.**