[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11662
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-01044-MMH-MCR

BLEU FINSTER,

Plaintiff-Appellant,

versus

U.S. BANK NATIONAL ASSOCIATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 31, 2018)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Bleu Finster is a Florida homeowner who claims that the servicer of her

home mortgage loan, U.S. Bank National Association ("U.S. Bank"), improperly

rejected her permanent loan modification and instituted foreclosure proceedings without providing her with notice and an opportunity to correct an error in her modification agreement. When Finster realized that U.S. Bank had denied her modification, she wrote U.S. Bank three times to ask it to correct the error and process the modification. U.S. Bank refused, explaining that Finster failed to properly execute the modification agreement. Finster then brought this lawsuit against U.S. Bank alleging, in a third amended complaint, violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, its implementing regulations ("Regulation X"), 12 C.F.R. part 1024, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72(9). The district court granted summary judgment to U.S. Bank. After careful review, we affirm the district court.

## I.

We review the district court's grant of summary judgment de novo, "considering the facts and drawing all reasonable inferences in the light most favorable to the non-moving party." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

RESPA—as implemented by Regulation X—allows borrowers to notify mortgage servicers of possible account errors.  *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016).  Once properly notified, a servicer must respond by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).  Account errors are broadly defined by § 1024.35(b), which includes a residual category for "[a]ny other error relating to the servicing of a borrower's mortgage loan."  *Id.* § 1024.35(b)(11).

## II.

In the light most favorable to Finster, the relevant facts are these.  Finster obtained a mortgage on her home in Duval County, Florida.  U.S. Bank is the servicer of the mortgage loan.  After Finster defaulted, U.S. Bank filed the first of two foreclosure actions against her.  In July 2013, U.S. Bank obtained a final judgment of foreclosure and the court set a judicial sale date for November 2013.

Before the sale, however, Finster submitted a loan-modification application to U.S. Bank, which determined that she was eligible for a loan modification, provided she made timely payments during a three-month trial period and then completed and submitted a loan-modification agreement. Finster made all of the required trial payments, so U.S. Bank dismissed the foreclosure action and sent her a letter in February 2014 containing two copies of a loan-modification agreement for her to execute and return. Once these agreements were completed and returned, U.S. Bank would process the permanent loan modification.

According to U.S. Bank's instructions, Finster needed to return "signed and notarized originals" of the modification agreement within 10 days. Finster did not return the originals, however. Instead, she signed copies of the originals, with images of the "Sign & Date" and "Notarize" stickers copied onto the documents, and returned those documents to U.S. Bank. U.S. Bank did not execute the documents because it found they did not comply with recording requirements.

Around a month later, U.S. Bank sent to Finster's counsel a second set of loan-modification documents. But it did not explain why the new documents were being sent or when they needed to be returned. U.S. Bank claims that it attempted to contact Finster's counsel in March and April of 2014 to explain why the documents were being sent again, but counsel states that he has no record of such

4

communications.  When Finster did not return the second set of documents, U.S. Bank denied Finster the modification.

Finster continued making her trial modification payments after the trial period, but U.S. Bank rejected them because it had denied the modification.  And because Finster's payments were not sufficient to bring her loan current, U.S. Bank considered her to be in default and so instituted a second foreclosure action.

In August 2014, Finster, through counsel, sent U.S. Bank the first of three "notices of error."  Finster asserted that U.S. Bank had violated two provisions in 12 C.F.R. § 1024.41, which governs a servicer's review of a loss-mitigation application, by (1) proceeding with foreclosure despite her performance of the modification agreement, and (2) wrongfully terminating the modification without provided her an opportunity to cure.  U.S. Bank responded by letter in September 2014 that "no error occurred" and that it did not accept her modification package because she had not correctly executed the modification documents.  Specifically, U.S. Bank stated, "the sign and date arrows were copied on to the modification documents, which is against recording guidelines."  U.S. Bank claimed that due to "stringent restrictions placed on us by your investor," which was Fannie Mae, it had to strictly comply with established regulations and guidelines.

In February 2015, Finster sent a second notice-of-error letter.  This letter faulted U.S. Bank for failing to timely apply five of Finster's mortgage payments

to the principal, interest, and escrow.  Once again, U.S. Bank responded that no error occurred.  According to U.S. Bank's response, four of the payments were held in "suspense" while Finster's account was in "loss mitigation review" and then applied to her account once U.S. Bank issued a "non-approval."  The final payment was rejected, U.S. Bank stated, because it was not sufficient to bring her account current after the modification was denied.

Finster's third and final notice of error alleged that U.S. Bank "wrongly repudiated the borrower's permanent loan modification agreement."  This letter faulted U.S. Bank for failing to notify her in writing that her modification agreement was not complete due to the lack of proper execution, which she said was required by 12 C.F.R. § 1024.41(b)(2)(i)(B).  To fix the error, according to Finster's counsel, U.S. Bank "must allow [Finster] to enter into the permanent modification that she was performing under" by allowing her to re-sign the modification documents.

Again, U.S. Bank responded that no error occurred.  U.S. Bank's response recounted the course of events, stating that Finster's signed modification agreement did not meet recording requirements, that U.S. Bank had tried to contact Finster's counsel in March and April 2014 without success, and that it removed her account from loss-mitigation review when it did not receive re-executed loan mitigation documents.  U.S. Bank said its "decision remains unchanged."

6

In May 2016, after Finster initiated this lawsuit, U.S. Bank allowed Finster to re-execute the loan modification, waived the late fees and costs she had accumulated since February 2014, dismissed the second foreclosure action, and brought her loan current under the original terms of the loan modification.

## III.

Finster's RESPA claim is based on U.S. Bank's alleged violation of its responsibilities to respond to a borrower's notice of error. Under Regulation X, as explained above, a servicer must either correct the error identified by the borrower or, after conducting a reasonable investigation, respond in writing with an explanation of why it found no error and the information it relied on. 12 C.F.R. § 1024.35(e)(1)(i). The district court concluded that undisputed evidence established that U.S. Bank complied with these requirements by explaining its reasons for denying Finster's loan modification. We agree that U.S. Bank's responses complied with RESPA by providing an explanation to Finster as to why her loan modification was denied, even though she was understandably unsatisfied with the responses and found U.S. Bank's actions to be unreasonable.

Finster nevertheless insists that U.S. Bank's responses were deficient. Her reasoning appears to be as follows. The "error" committed by U.S. Bank was its failure to give her written notice of the problem with the modification documents she submitted to U.S. Bank and a reasonable opportunity to cure before it denied

7

the modification and instituted foreclosure proceedings.  So when U.S. Bank received notice of that error, it had a responsibility either to correct the error, by allowing her to re-execute the modification agreement, or to explain why it was not required to give notice and an opportunity to cure.  Since U.S. Bank did neither, Finster asserts, it violated RESPA.

However, Finster's briefing to this Court cites no authority for the rule that U.S. Bank was required to give her notice and an opportunity to re-execute the modification agreement.  Although Finster cited Regulation X for that proposition in her third notice of error, specifically 12 C.F.R. § 1024.41(b)(2)(i)(B), she has abandoned that position.[1]  Therefore, to the extent U.S. Bank could be faulted for failing to specifically address whether it had a legal obligation under § 1024.41 to provide Finster notice and an opportunity to cure, summary judgment was nevertheless appropriate because Finster abandoned any claim based on U.S. Bank's failure to address § 1024.41 in its response to her notices of error.

Finster instead argues that U.S. Bank's obligation to provide notice and an opportunity to cure arose from Fannie Mae's guidelines and "the implied covenant of good faith and fair dealing."  But we agree with the district court that Finster did not mention these grounds in any of her notices of error.  To be sure, absolute

---

[1] Finster explains on appeal that "the loss mitigation procedures in Regulation X only apply to the processing of an application, and are no longer applicable where, as here, the application has been approved."  Finster's Br. at 18.  U.S. Bank agrees that 12 C.F.R. § 1024.41 does not apply.

clarity in a notice of error is not required, and a servicer must respond when it "can reasonably identify a valid assertion of an error."  12 C.F.R. § 1024.35(g)(1)(ii). Under the circumstances, however, no reasonable jury could conclude that U.S. Bank's failure to address unspoken grounds for a legal obligation asserted by a borrower reflects the lack of a proper investigation or explanation.

In fact, there is no evidence that Fannie Mae's guidelines required U.S. Bank to take the actions that Finster claims were necessary.  She cites an "Error and Omissions Compliance Agreement," which she signed as part of the modification agreement, but that agreement imposed no obligations on U.S. Bank.  Rather, it simply reflects that Finster agreed to cooperate in the correction of any clerical errors in the agreement "if deemed necessary or desirable in the reasonable discretion of the Lender" to enable the Lender to sell or market the loan.  Nothing in that agreement "entitles the borrower to written notice of any clerical error," as Finster alleges.  Additionally, an excerpted transcript page from the deposition of U.S. Bank's corporate representative, Shanan Owen, suggests that Fannie Mae did not "have an actual error resolution in their guidelines."[2]

Nor does the lack of evidence regarding Fannie Mae's guidelines work in Finster's favor, as she suggests.  U.S. Bank did not need to refute her unsupported contention with evidence.  Rather, it was Finster's burden, as the party seeking to

---

[2] Owen's next sentence begins, "However, with the . . . ," but the page ends at that point and Finster did not submit any additional pages of the transcript.

prevent summary judgment, to submit or identify evidence that created a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").

As for the implied covenant of good faith and fair dealing, Finster fails to explain how it applies in the context of a servicer's response to a notice of error. She asserts that "the question of whether the clerical error was sufficient, in and of itself, to result in the forfeiture of the loan modification would have to have been evaluated in light of the implied covenant of good faith and fair dealing," but she brought no independent contract or good-faith-and-fair-dealing claim and does not argue that U.S. Bank was required to honor the agreement as previously executed. Accordingly, Finster's arguments on this point provide no basis for reversal.

The gist of Finster's position seems to be that U.S. Bank's actions were unreasonable. And maybe they were. But unreasonable conduct by a servicer does not necessarily amount to a violation of RESPA or Regulation X, even if their requirements seek to establish a baseline of reasonable conduct in many ways. In this regard, the fact that U.S. Bank later granted Finster the loan modification does not create a genuine issue of material fact as to whether U.S. Bank violated RESPA in responding to Finster's notices of error. Specifically, it is not "significantly probative" evidence that U.S. Bank's prior explanation was wrong or

10

insufficient.  *See Anderson*, 477 U.S. at 249–50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).

In sum, we hold that the district court properly granted summary judgment to U.S. Bank on Finster's RESPA claim.

## IV.

Finster also brought an FCCPA claim under Fla. Stat. § 559.72(9).  That section prohibits a person, in collecting consumer debts, from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person knows that the right does not exist."  Fla. Stat. § 559.72(9).

The district court determined that U.S. Bank had no actual knowledge that it lacked the authority to deny the loan modification and proceed with foreclosure. Finster grounds U.S. Bank's knowledge in Fannie Mae's guidelines, but we reject that argument for the same reasons we have stated above.  Nor is there other evidence in the record suggesting that U.S. Bank knew that it was bound by the modification agreement despite the lack of proper execution.  Accordingly, we affirm the grant of summary judgment on Finster's FCCPA claim.

For all of these reasons, the district court properly granted summary judgment against Finster on her RESPA and FCCPA claims.  We **AFFIRM.**

11