[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12984
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-01182-KOB

VANN CALDWELL,
Individually and as Administrator of the Estate
of Janice Marrow,

                                   Plaintiff-Counter Defendant-Appellant,

versus

NATIONSTAR MORTGAGE, LLC,
d.b.a. Mr. Cooper,
PEYTON HOMES, LLC,

                                   Defendants-Counter Claimants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 31, 2021)

Before MARTIN, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Vann Caldwell appeals the district court's order dismissing his complaint against Nationstar Loan Servicing LLC for failure to state a claim under the Real Estate Settlement Procedures Act.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

These are the facts as alleged in Caldwell's complaint.

Caldwell's mother, Janice Marrow, bought a home in Eastaboga, Alabama with money borrowed from her bank.  The bank's loan was secured by a mortgage and note, which were eventually assigned to Nationstar.

Ms. Marrow passed away in August 2017 and Caldwell, her son, became the administrator of her estate.  The estate stopped paying the mortgage in February 2018 and Nationstar foreclosed on the home.

On May 2, 9, and 16, 2018, Nationstar published notices in the local newspaper that the home would be sold at a foreclosure sale on June 13, 2018. Nationstar published another notice in the local paper on June 1, 2018 that the foreclosure sale was being moved to July 25, 2018.  The notices said the sale would take place "during the legal hours of sale" at the main entrance of the courthouse in the city of Eastaboga, Alabama in Calhoun County.

The home was sold, as advertised, on July 25, 2018 to Peyton Homes. Caldwell first learned about the sale the next month when he visited the home.  There were people inside and his mother's belongings were gone, other than her piano.

On October 1, 2018, Caldwell wrote to Nationstar, saying that he never received notice of the foreclosure sale and the lack of notice violated the mortgage agreement. Caldwell asked for a copy of all notices and the mortgage agreement and asked how much money the estate owed at the time of the foreclosure sale and how much Nationstar received at the sale.

On October 22 and 24, 2018, Caldwell again wrote to Nationstar, saying that he never received notice of the foreclosure sale and the lack of notice violated the mortgage agreement and Alabama law. Caldwell asked for a copy of any default or foreclosure notices that had been sent by Nationstar, a copy of the published notices, and the address of the courthouse in Eastaboga. Nationstar responded that it investigated the concerns raised in Caldwell's letters and concluded that "there were no errors." Nationstar attached some of the information Caldwell had requested.

Caldwell sued Nationstar for violating the Real Estate Settlement Procedures Act.[1] Caldwell alleged that his October 2018 letters to Nationstar were qualified written requests that required a response under the Act but Nationstar didn't properly respond within thirty days as required. Caldwell alleged that he suffered actual

---

[1] Caldwell also alleged several state law violations. After the district court dismissed Caldwell's claim under the Real Estate Settlement Procedures Act, it declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. Caldwell has not argued on appeal that the dismissal of the state law claims was improper, so we do not address the state law claims on appeal.

3

damages from the loss of his mother's home, loss of her belongings, and his mental anguish.

Nationstar moved to dismiss Caldwell's claim because the actual damages he alleged—losing the home, his mother's belongings, and his mental anguish—were not "as a result of" Nationstar's failure to respond properly to the October 2018 letters, as required by the Act. 12 U.S.C. § 2605(f)(1)(A). The estate's failure to pay the mortgage and the foreclosure, Nationstar argued—and not its own failure to respond properly to Caldwell's letters—caused the home to be sold, his mother's things to get thrown away, and his mental anguish. Nationstar argued that there was no causal link between its failure to respond properly to Caldwell's letters and the damages Caldwell alleged in his complaint.

The district court granted Nationstar's motion to dismiss Caldwell's claims under the Act because he did not allege a causal link between his damages—the loss of the home, loss of his mother's things, and his mental anguish—and Nationstar's improper response to Caldwell's letters. This is Caldwell's appeal of the district court's dismissal order.

**STANDARD OF REVIEW**

"We review de novo the district court's grant of a motion to dismiss for failure to state a claim under [Federal Rule of Civil Procedure] 12(b)(6)." Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008). We "accept[] the allegations in the

4

complaint as true and constru[e] them in the light most favorable to the plaintiff."

Id. "To survive a motion to dismiss, a complaint need only present sufficient facts,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Renfroe v.

Nationstar Mortg., LLC, 822 F.3d 1241, 1243 (11th Cir. 2016) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544 (2007)).

## DISCUSSION

Caldwell argues that the district court erred in dismissing his claim under the

Real Estate Settlement Procedures Act because Nationstar, once it received his

qualified written requests, was required under the Act to rescind the foreclosure sale.

The servicer's failure to rescind the foreclosure sale, Caldwell argues, caused his

actual damages—the loss of his mother's home, her belongings, and his mental

anguish. We affirm the dismissal of Caldwell's complaint because he never asked

Nationstar to rescind the foreclosure sale, and Nationstar's failure to do what

Caldwell did ask it to do—provide information about the mortgage—did not cause

his damages.

Despite his arguments on appeal, Caldwell never asked Nationstar to rescind

the foreclosure sale. In his complaint, Caldwell alleged that Nationstar violated the

Act because it didn't properly respond to his requests for information within thirty

days.  But the complaint and the attachments never used the word "rescind"—or anything like it—and they did not ask to "undo" the sale or "give back my house."[2]

Caldwell never asked Nationstar to rescind the foreclosure sale because the Act doesn't authorize a borrower to request that the bank rescind a foreclosure sale. The Act allows a borrower to make "a qualified written request" to the bank for action based on one of two things:  (1) the borrower's belief "that [his] account is in error" or (2) the need for "other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B)(ii).  Caldwell went with the second option—he asked for information.

Caldwell never asked Nationstar to rescind the foreclosure sale because the Act doesn't authorize the bank to rescind a foreclosure sale.  Once the bank receives a "qualified written request" from the borrower, the bank has four options under the Act:  (1) make "corrections in the account of the borrower"; (2) explain why it "believes the account of the borrower is correct"; (3) give the "information requested by the borrower"; or (4) give "an explanation of why the information requested is unavailable or cannot be obtained."  Id. § 2605(e)(2)(A)–(C).  Rescinding a foreclosure sale after a home has been foreclosed is not one of the required responses under the Act.

---

[2]  To the extent there's any tension between Caldwell's complaint and the attachments about what Caldwell requested in his letters, the attachments control.  See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

Rescinding a foreclosure sale after the sale has been completed is a matter of state, not federal, law. In Alabama, for example, "[a] failure to provide proper notice under the mortgage is a ground for challenging a foreclosure sale within an ejectment action, and a lack of proper notice renders a foreclosure sale void." Rosser v. Fed. Nat'l Mortg. Ass'n, No. 2180917, 2020 WL 6372904, at *5 (Ala. Civ. App. Oct. 30, 2020) (citing Ex parte Turner, 254 So. 3d 207 (Ala. 2017)). The Act "does not annul, alter, or effect . . . the laws of any [s]tate with respect to settlement practices" unless the state laws are inconsistent with the Act. 12 U.S.C. § 2616. Alabama's ejectment procedure for rescinding a foreclosure sale for lack of proper notice is not inconsistent with the Act.

While Caldwell didn't request that Nationstar rescind the foreclosure sale, his October 2018 letters (attached to his complaint) did ask Nationstar for information about the mortgage and sale. On October 1, 2018, Caldwell requested:

1.   A copy of all correspondence, letters and/or notices sent from [Nationstar] or authorizing representative between January 1, 2018 to August 31, 2018;
2.   A copy of the mortgage agreement;
3.   The amount the account was in default at the time of foreclosure; and
4.   The amount received in the foreclosure sale.

On October 22, 2018, Caldwell requested: "A copy of any and all default and/or foreclosure notices sent from [Nationstar] and/or authorizing representative between January 1, 2018 to July 25, 2018." And on October 24, 2018, Caldwell made an

7

additional request for "1. A copy of all published notices of the foreclosure sale; and 2. The address to the Courthouse in the City of Eastaboga, Calhoun County, Alabama."

To state a claim under the Act, Caldwell had to allege that he suffered "actual damages . . . as a result of the failure" by Nationstar to respond properly to Caldwell's October 2018 requests for information. 12 U.S.C. § 2605(f)(1)(A); see also Renfroe, 822 F.3d at 1246 ("[D]amages are an essential element in pleading a RESPA claim. . . . [T]here must be a 'causal link' between the alleged violation and the damages." (citations omitted)). But, as the district court concluded, Caldwell did not plausibly allege a "causal link" between Nationstar's failure to respond properly to Caldwell's requests for information within thirty days and the actual damages he alleged in his complaint—losing his mother's home, losing her belongings, and his mental anguish.

Caldwell's mother's home was sold and her belongings were removed (causing Caldwell's mental anguish) because the estate didn't pay the mortgage, Nationstar foreclosed for lack of payment, and the home was sold at a foreclosure sale on July 25, 2018. These things didn't happen because Nationstar violated the Act by not properly responding to requests for information. Caldwell didn't request information from Nationstar until three months after the mortgage was foreclosed and the home sold. We agree with the district court that "none of [Caldwell's]

8

asserted damages occurred 'as a result of' Nationstar's alleged failure to adequately respond" to the qualified written requests.

Caldwell argues that his allegations are no different than ones we found sufficient in Renfroe. But, unlike here, the Renfroe borrower asked Nationstar for a remedy to fix an account error in her monthly mortgage payments. Renfroe, 822 F.3d at 1242–43. Her qualified written request told Nationstar that it had "mistakenly charg[ed] her for property taxes or had miscalculated her loan amortization schedule" and "requested an investigation, a 'detailed explanation,' certain account information, and a refund if appropriate." Id. The Renfroe borrower's request fits squarely within the possible remedial actions authorized under the Act. See 12 U.S.C. § 2605(e)(2)(A) (requiring that a servicer "make appropriate corrections in the account of the borrower"). The Renfroe borrower sued Nationstar because it did not correct her account or refund her money in response to her request and the borrower suffered actual damages by overpaying on her mortgage. Renfroe, 822 F.3d at 1244–46. There was a causal link between her overpayment damages and Nationstar's "fail[ure] to refund her mortgage overpayments," which would have been refunded "if Nationstar had heeded its statutory duties." Id. at 1246.

Caldwell, unlike the Renfroe borrower, did not ask Nationstar for the remedy he now seeks, to rescind the foreclosure sale, in his letters. Rescinding a foreclosure

sale is not an authorized "action" under the Act. See 12 U.S.C. § 2605(e)(2). Instead, Caldwell only asked—as he was allowed to do under the Act—for information about the mortgage and his mother's account. Nationstar's failure to respond to Caldwell's requests for information did not cause the loss of his mother's home, the loss of his mother's belongings, and his mental anguish, all of which happened months before and were unconnected to his "qualified written requests."

## CONCLUSION

Without plausible allegations of a causal link between the alleged violation of the Act and his actual damages, Caldwell's complaint fails to state a claim. For that reason, we affirm the district court's order dismissing his claim under the Act.[3]

**AFFIRMED.**

---

[3] Because Caldwell was not personally obligated under the loan, he likely was not a "borrower" under the Act. See 12 U.S.C § 2605(f) ("Whoever fails to comply with . . . this section shall be liable to the borrower for . . . any actual damages to the borrower . . . ." (emphasis added)); see also Keen v. Helson, 930 F.3d 799 (6th Cir. 2019) (holding that "a 'borrower' under [section] 2605(f) is someone who is personally obligated under a 'federally related mortgage loan.'"). But because he failed to allege a causal link between the alleged violation of the Act and his actual damages, we don't have to decide the "borrower" issue.