FILED
United States Court of Appeals
Tenth Circuit

March 8, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

---

BRYAN TOONE; JOLYNNE TOONE,

Plaintiffs - Appellants,

v.

WELLS FARGO BANK, N.A.;
NORWEST MORTGAGE, INC.;
LASALLE BANK N.A., as Trustee;
BANK OF AMERICA, N.A; ETITLE
INSURANCE AGENCY; LUNDBERG
& ASSOCIATES; KENT W. PLOTT;
MARK S. MIDDLEMAS,

Defendants - Appellees,

PREMIER MORTGAGE
CORPORATION OF AMERICA;
ACCUBANK MORTGAGE
CORPORATION, d/b/a Accumortgage
Corporation,

Defendants.

No. 11-4188

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:11-CV-00170-TS)

---

Brian W. Steffensen, Steffensen Law Office, Salt Lake City, Utah, for Plaintiffs - Appellants.

James D. Gardner, (M. Lane Molen, with him on the brief) of Snell and Wilmer L.L.P., Salt Lake City, Utah, for Defendants - Appellees Wells Fargo Bank, N.A., Norwest Mortgage, Inc. LaSalle Bank, N.A. and Bank of America, N.A.; and

Richard Gunnerson, (Scott Lundberg on the brief), Lundberg & Associates, Salt Lake City, Utah, for Defendants - Appellees eTitle Insurance Agency, Lundberg & Associates, Kent W. Plott, and Mark S. Middlemas.

Before **LUCERO**, **HOLLOWAY**, and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

Bryan and JoLynne Toone executed a promissory note (the Note) secured by a deed of trust on their home (the Trust Deed). The Note was assigned several times. After the Toones defaulted on the Note, their home was scheduled to be sold at a trustee's foreclosure sale. They filed suit to halt the foreclosure and to obtain damages and declaratory relief based on alleged violations of statutory and common-law duties by numerous parties who had current or prior interests in the Note and Trust Deed or were involved in the foreclosure efforts. The district court denied relief and the Toones appeal. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    BACKGROUND

The Trust Deed and Note were executed in 1998. The Note named Premier Mortgage Service Corp. of America (Premier) as "Lender," Aplt. App., Vol. II at 208, and the Trust Deed named Inwest Title Services, Inc. as trustee and Premier as beneficiary. The Note stated that it could be transferred by the Lender. Similarly, the Trust Deed provided: "The Note or a partial interest in the Note

(together with this Security Instrument) may be sold one or more times without prior notice to Borrower." *Id.* at 215. It also stated that "[t]he covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower." *Id.* at 214. And it permitted the Lender to remove the trustee and appoint a successor, which would "succeed to all the title, power and duties conferred upon Trustee herein and by applicable law." *Id.* at 216. Defendant Wells Fargo Bank, N.A. serviced the Loan.

The Note was transferred three times. Premier assigned it to Accubanc Mortgage Corporation, which assigned it to Defendant Norwest Mortgage, Inc., which assigned it to Defendant LaSalle Bank, N.A. "as Trustee for the holders of Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2004-CL1." *Id.*, Vol. III at 302. Defendant Bank of America, N.A., as successor by merger to LaSalle, became the Lender.[1]

On October 20, 2009, Bank of America executed a document appointing Defendant eTitle Insurance Agency as the successor trustee under the Trust Deed. The same day, eTitle executed a "Notice of Default and Election to Sell," stating that the Toones had defaulted on their monthly payments. *Id.* at 365

---

[1] The record also includes an allonge that contains an endorsement by Wells Fargo Home Mortgage, Inc., as "Attorney-in-fact for Wachovia Bank fka First Union National Bank as Trustee," transferring the Note to LaSalle. Aplt. App., Vol. II at 210. None of the parties explains the relationship of this endorsement to Norwest's endorsement to LaSalle, and the relationship is not apparent from the record.

(capitalization omitted).  It declared that under the terms of the Note and Trust Deed, "the unpaid principal balance is accelerated and now due, together with accruing interest, late charges, costs and trustees' and attorneys' fees."  *Id.*  And it stated that eTitle had elected to sell the property.

About a month later, the Toones signed a "Home Affordable Modification Program Loan Trial Period" Agreement (HAMP Agreement).  *Id.* at 357 (capitalization omitted).  (The copy in the record was not signed by Wells Fargo, but we will assume that both parties signed the original.)  In it, the Toones agreed to provide various financial information and to make trial-period payments for three months, beginning on December 1, 2009.  The HAMP Agreement stated that Wells Fargo would suspend any scheduled foreclosure if the Toones met their obligations, but explained:

> [A]ny pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action . . . .

*Id.* at 358.  The HAMP Agreement also disclosed that it was not a modification of the Note and Trust Deed, and stated that those documents would "not be modified unless and until (I) [the Toones] meet all of the conditions required for modification, (ii) [the Toones] receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed."  *Id.*  If, however, the Toones met the conditions required for modification, they would

receive a Modification Agreement modifying the Note and Trust Deed to reflect a new payment amount, which would include unpaid interest and delinquent amounts. The Note and Trust Deed were never modified, and eTitle conducted a trustee's foreclosure sale on January 3, 2011.

On the same day, the Toones filed suit in Utah state court against Wells Fargo, Norwest, LaSalle, and Bank of America (the Wells Fargo Defendants), as well as eTitle and the legal counsel who assisted in the foreclosure process: the law firm Lundberg & Associates, and attorneys Kent W. Plott and Mark S. Middlemas (the eTitle Defendants). (Other defendants were named in the suit but never served.) The Toones asserted claims for (1) declaratory judgment (in essence, challenging the foreclosure process); (2) violations of the Utah Consumer Sales Practices Act (UCSPA), Utah Code Ann. §§ 13-11-1 to -23 (1973); (3) breach of the trustee's duty of good faith and fair dealing (against eTitle only); (4) violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p (1996); (5) breach of contract and the covenant of good faith and fair dealing (against the Wells Fargo Defendants only); and (6) violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601–2617 (1974) (against Wells Fargo only).

With the consent of the eTitle Defendants, the Wells Fargo Defendants removed the suit to the United States District Court for the District of Utah under that court's original jurisdiction over the Toones' federal statutory claims, *see*

28 U.S.C. § 1331, and supplemental jurisdiction over the remaining claims, *see id.* § 1367(a). *See id.* § 1441(a) (permitting removal to federal court of civil actions brought in state court over which United States district courts would have original jurisdiction). The eTitle Defendants and the Wells Fargo Defendants filed separate motions to dismiss under Fed. R. Civ. P. 12(b)(6), which the district court granted. The Toones appeal.

## II.   DISCUSSION

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A.   Assignments of the Note

We begin with the heart of the Toones' claims—the challenge to the various assignments of the Note. The centrality of this issue was emphasized by the Toones in their response to the Wells Fargo Defendants' motion to dismiss:

The gravamen of this complaint is the allegation that the purported endorsements on the Toone Note are defective for many reasons, such that neither LaSalle nor BOA ever legally became the owner/endorsee of the Toone Note. If that is true—which for the purposes of this Motion to Dismiss must be deemed to be true—then eTitle was not properly and validly appointed Substitute Trustee. If eTitle never legally became the Substitute Trustee under the Toone Trust Deed, then the commencement of the foreclosure, the motion to lift stay, the purported foreclosure and then the eviction action were and are all wrongful and null and void.

Aplt. App., Vol. III at 326.

The problem for the Toones is that their complaint does not adequately allege that the endorsements were improper. It asserts that the endorsements were invalid because the first was signed by an underwriting assistant for the assignee (Accubanc) instead of the assignor (Premier), and the remaining ones were "robo-signed." *Id.*, Vol. I at 19 (internal quotation marks omitted). They contend that these improprieties are apparent from the face of the Note and common knowledge of creditors' practices.

Ordinarily, we accept the well-pleaded factual allegations of the complaint as true for purposes of resolving a motion under Rule 12(b)(6). *See Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). But there are exceptions to this rule. Courts are permitted to review "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Gee*, 627 F.3d at 1186 (internal quotation marks omitted). The Note falls squarely within this exception: We may consider it in

evaluating the plausibility of the Toones' claims because it is mentioned in the complaint, it is central to their claims, and its authenticity is not disputed. Moreover, we examine the document itself, rather than the complaint's description of it. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002).

The face of the Note contradicts the Toones' allegations. The first endorsement states that Accubanc is Premier's "agent and attorney in fact," Aplt. App., Vol. II at 209 (capitalization omitted), and the Toones present no argument why the endorsement would be invalid when signed by Premier's agent. Likewise, the other endorsements look regular on their face. Of course, the endorsements may be forged or otherwise fraudulent. But the complaint alleges no facts from which one could infer such misconduct. It does not explain what "robo-signing" is or why it renders the endorsements fraudulent, let alone include factual content indicating that it occurred in this case. Numerous courts have held that bald allegations of "robo-signing" do not suffice under the Rule 8(a)(2) standard set by *Iqbal*.[2] Moreover, the allegations certainly do not satisfy Fed. R.

[2] *See Butler v. Wells Fargo Bank, N.A.*, No. MJG–12–2705, 2013 WL 145886, at *3 (D. Md. Jan. 11, 2013); *Nottage v. Bank of New York Mellon*, No. 12-00418 JMS/BMK, 2012 WL 5305506, at *6 (D. Haw. Oct. 25, 2012); *Macawile v. Pro30 Funding*, No. 2:12-CV-00567-MCE-DAD, 2012 WL 2912349, at *2 (E.D. Cal. July 16, 2012); *Islamic Ass'n of DeSoto, Texas, Inc. v. Mortg. Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012); *Block v. BAC Home Loans Servicing LP*, No. 11-11181, 2012 WL 2031640, at *4 (E.D. Mich. June 6, 2012); *Mickelson v. Chase*
(continued...)

-8-

Civ. P. 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Toones' complaint does not "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (internal quotation marks omitted).

Accordingly, the factual predicate of most of the Toones' arguments on appeal is undermined. These include the challenges to the dismissal of the declaratory-judgment claims, the UCSPA claim, the breach-of-duty claim against eTitle, and the portion of the FDCPA claim premised on Defendants' lack of authority to foreclose. We now turn to the Toones' remaining arguments, which can be disposed of rather summarily.

**B.    FDCPA**

The argument portion of the Toones' opening brief on appeal asserts that "the defendants committed multiple acts which constituted violations of the FDCPA[]." Aplt. Br. at 42. It fails, however, to specify what those acts were.

---

[2](...continued)
*Home Fin. LLC*, No. C11-1445 MJP, 2011 WL 5553821, at *3 (W.D. Wash. Nov. 14, 2011); *Peterson v. GMAC Mortg., LLC*, No. 11-11115-RWZ, 2011 WL 5075613, at *5 (D. Mass. Oct. 25, 2011); *Schultz v. BAC Home Loans Servicing* No. CV-11-00558-PHX-NVW, 2011 WL 3684481, at *2 (D. Ariz. Aug. 23, 2011); *Cerecedes v. U.S. Bankcorp*, No. CV 11-219 CAS (FMOx), 2011 WL 2711071, at *5 (C.D. Cal. July 11, 2011).

Perhaps the brief is referring to a paragraph in the preceding argument section of the brief that asserts that Defendants did not have "the legal right to immediate possession of the property" and that the Toones "were not in default." *Id.* But if the legal-right assertion relies on anything other than the allegedly improper endorsements, the brief does not say what that was. And there is no explanation of why the Toones were not in default. Although the Toones' counsel claimed at oral argument that they were not in default because they made their required HAMP payments, this clarification came too late. Issues so inadequately treated in the argument sections of opening briefs do not deserve our attention. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (appellate court will ordinarily "decline[] to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief"); Fed. R. App. P. 28(a)(9) (argument section of appellant's brief must contain "appellant's contentions and the reasons for them"). (We note that the record suggests that the Wells Fargo Defendants were never bound by the HAMP Agreement because the Toones did not deliver required financial documents.)

### C. Breach of Contract and of the Covenant of Good Faith and Fair Dealing

In support of the Toones' claims against the Wells Fargo Defendants for breach of contract and of the covenant of good faith and fair dealing, the argument portion of their brief asserts that the Wells Fargo Defendants "made

representations, warranties and promises" during the HAMP modification process that modified the Note and Trust Deed. Aplt. Br. at 47. Again, however, they provide no specifics about what warranties or promises were violated. We see no coherent argument against the dismissal of this claim.

### D. RESPA

The Toones claim that Wells Fargo violated RESPA by not responding to their written requests for information. *See* 12 U.S.C. § 2605(e) (stating the duties of loan servicers to respond to borrower inquiries). But individuals are entitled to damages under § 2605(e) only for actual damages arising from a RESPA violation and for statutory damages arising from a pattern or practice of violations:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: . . . In the case of any action by an individual, an amount equal to the sum of—(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

*Id.* § 2605(f)(1)(A), (B). Therefore, to survive a Rule 12(b)(6) motion to dismiss a claim under § 2605(e) of RESPA, plaintiffs must plead actual damages stemming from the failure to respond to requests or a pattern or practice of misconduct. *See Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510–11 (8th Cir. 2012) (affirming 12(b)(6) dismissal of § 2605(e) claim because complaint did not identify actual damages arising from failure to respond to written requests). The district court ruled that the Toones had not alleged

damages resulting from delay in responding to their requests but only damages resulting from "Defendants' actions occurring after Defendants' tardy response." Aplt. App., Vol. III at 391 (Memorandum Decision & Order on Pending Mots. at 12, *Toone v. Wells Fargo Bank, N.A.*, No. 2:11-CV-170 (D. Utah Sept. 27, 2011)) (internal quotation marks omitted). The argument portion of the Toones' opening brief neither points to any allegations of damages from delay nor challenges the district court's ruling that such damages must be alleged. As for statutory damages, the Toones' complaint merely asserts that a pattern or practice can be inferred from the failure to respond to their requests. We agree with the district court that this inference is not plausible because of the conclusory nature of the allegations of the complaint and the failure to allege any violations with respect to other borrowers.

### E. Procedural Challenges

The Toones raise five procedural challenges to the district court's disposition. None merits extensive discussion.

### 1. Violation of Utah Constitution

The Toones' reply brief raises an argument never before mentioned: namely, that by dismissing their complaint with prejudice, the district court denied them their rights under the Utah Constitution's "open courts" provision, *see* Utah Const. art. I, § 11, to obtain relief for Defendants' wrongdoing and to quiet title to their house. Reply Br. at 1 (internal quotation marks omitted). We

-12-

do not consider this argument because it was not raised in the Toones' opening brief. *See Bronson*, 500 F.3d at 1104.

### 2. Improper Reply Memorandum

The Toones claim that the district court erred in not striking the Wells Fargo Defendants' reply memorandum in support of their motion to dismiss. They assert that it raised new arguments, theories, and case law to which they did not have the opportunity to respond. We question their contention that they had no opportunity to respond, because the district court did not render a decision for another four months. But in any case, they have failed to show how they are prejudiced. They have not suggested that they would have presented any evidence if they had been given an opportunity to respond (and evidence would ordinarily not be properly considered in a Rule 12(b)(6) proceeding anyway). And if their point is that they could have made good arguments in response, they have not identified any such arguments.

### 3. Improper Motion to Dismiss

Similarly, the Toones complain that the eTitle motion to dismiss was improper in that it incorporated references to matters outside the complaint and failed to provide evidentiary support for those outside matters. But they do not point to anything specific, and we see no such improprieties.

### 4. Deciding State-Law Claims

The Toones argue that the district court lacked jurisdiction to rule on the merits of their state-law claims once it dismissed the federal claims. They cite no statute or judicial decision in support. And their view of the law is mistaken. It was a matter of district-court discretion whether to consider the Toones' state-law claims after dismissing their federal claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction [over state-law claims] after dismissing every claim over which it had original jurisdiction is purely discretionary."). There was no abuse of discretion here.

### 5. Denial of Permission to Amend

The Toones argue that the district court erred by denying them leave to amend their complaint after ruling that it failed to state a claim. The court denied leave to amend on the ground that it would be futile because the proffered amended complaint cured none of the deficiencies in the original complaint. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). The Toones argue that they cannot be denied the right to amend absent "a showing that it is impossible for the plaintiff to plead facts which would state a claim for relief." Aplt. Br. at 48. They are wrong. The district court is not required to imagine all possible amendments and determine whether any would state a claim. After all, the plaintiff may be unwilling to make allegations stating a claim because the allegations would be untrue. Rather, the plaintiff must submit a proposed

-14-

amendment for the court's consideration, or at least specify how an amendment would cure the deficiency. *See Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009). Although the Toones submitted proposed amendments to the district court, they have not argued on appeal how the proposed amendments would materially improve the complaint.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.