# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-4069

_____

Steven L. Wirtz,

*Plaintiff - Appellee,*

v.

Specialized Loan Servicing, LLC,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 16, 2017
Filed: April 3, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Steven Wirtz sued Specialized Loan Servicing, LLC for violations of the Real Estate Settlement Procedures Act ("RESPA") and the Minnesota Mortgage Originator and Servicer Licensing Act. The district court granted summary judgment in favor of Wirtz, and awarded him a total of $50,962.55 in actual damages, statutory damages, attorney's fees, and costs under the two statutes. Specialized appeals, and

we reverse because Wirtz did not prove actual damages under RESPA and thus did not establish an essential element of his federal claim.

## I.

RESPA imposes various duties on mortgage loan servicers. 12 U.S.C. § 2605. One duty is to respond to certain borrower inquires, called "qualified written requests," in one of three ways. § 2605(e). First, the servicer may correct the borrower's account and notify the borrower of the correction. § 2605(e)(2)(A). Second, the servicer may, "after conducting an investigation," provide the borrower with "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer." § 2605(e)(2)(B)(i). Or third, the servicer may, "after conducting an investigation," provide the borrower with the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." § 2605(e)(2)(C)(i).

If a mortgage loan servicer fails to comply with its duties to respond appropriately to a qualified written request, the individual borrower is entitled to "any actual damages to the borrower as a result of the failure." § 2605(f)(1)(A). The borrower also may recover "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." § 2605(f)(1)(B). The Minnesota Act piggybacks on RESPA by forbidding a servicer to violate a "federal law regulating residential mortgage loans." Minn. Stat. § 58.13, subdiv. 1(a)(8).

Wirtz ended up in a dispute with Specialized over the servicer's responses to Wirtz's qualified written requests. To understand the dispute, it is necessary to review the history of Wirtz's mortgage loan.

In August 2001, Wirtz received a mortgage loan from ABN Amro Mortgage Group, Inc. JPMorgan Chase Bank, N.A. ("Chase") began to service the loan in 2002. Chase assigned servicing of the loan to Specialized in June 2013. As part of the transfer of service, Specialized received from Chase a portion of Wirtz's payment history, which included a record of payments beginning on June 11, 2011.

This partial payment history showed that Wirtz was one-month delinquent on his loan as of the first entry for June 2011. The partial payment history also showed that Wirtz fell behind by another payment between June 2011 and June 2013. Based on this history received from Chase, Specialized sent Wirtz a notice that loan payments were past due.

After Wirtz made several telephone calls to Specialized disputing that his account was overdue, Wirtz contacted the Minnesota Attorney General's office. The Attorney General's office sent a letter to Specialized on October 9, 2013, asking the servicer to review the matter promptly.

Specialized responded on October 18, 2013, stating that its records showed that Wirtz's account was one month delinquent on June 11, 2011, that Wirtz had missed two payments to Chase in February 2012 and February 2013, and that Wirtz had made an extra payment in May 2012, resulting in an overall two-month delinquency. Specialized said that if Wirtz wanted to prove that his loan was not delinquent when Chase began servicing the loan, he needed to provide records from the loan servicer who preceded Chase. Similarly, if Wirtz wanted to contest the record that he missed payments in February 2012 and February 2013, then Specialized required Wirtz to provide the front and back of cancelled checks showing that Chase received those payments.

On November 8, 12, and 25, 2013, Wirtz's counsel sent a series of three qualified written requests to Specialized asking for information, including "[t]he

monthly principal and interest payment, and monthly escrow payment from origination to present." He also sought "[a] full explanation of why [Specialized] believes that Steven Wirtz's mortgage was past due on or before 6/17/2013 when [Specialized] was transferred the servicing rights for the above-referenced loan." Specialized responded to the three letters on December 9, 2013, and reiterated that Wirtz must provide the records described in its letter to the Minnesota Attorney General's Office if he wished to convince Specialized that the account was current.

On December 27, 2013, and February 4, 2014, Wirtz's attorney sent Specialized two more qualified written requests, in which he provided a complete copy of Wirtz's loan payment history and Wirtz's bank records from January 2012 to November 2013. The December 27 letter stated that Wirtz paid $80 for the bank records but did not mention any costs for obtaining the loan payment history. The letters also restated Wirtz's position that Specialized's reporting of his account was erroneous. Specialized responded to Wirtz's letters on February 5 and March 13, 2014, respectively. The responses provided a listing of Specialized's records for Wirtz's loan beginning in November 2011 and repeated Specialized's position on Wirtz's account.

Wirtz then sued Chase and Specialized, alleging that both entities violated RESPA and the Minnesota Act by failing to respond adequately to his qualified written requests. The complaint asserted that the payment history from 2011 showed a one-month delinquency because Chase mistakenly applied an entire payment in 2010 to reduce the loan's principal amount when it should have registered the amount as a normal monthly payment to reduce principal and interest. Wirtz eventually settled with Chase, leaving Specialized as the only defendant.

The district court then granted summary judgment in favor of Wirtz on his claims under RESPA and the Minnesota Act. The court concluded that Specialized failed to conduct a sufficient investigation into Wirtz's letters regarding the pre-June

-4-

2011 delinquency and to provide Wirtz with the information that he requested as required by RESPA. The court determined that because Specialized violated RESPA, the servicer also contravened the Minnesota Act's prohibition on violating a federal law regulating residential mortgage loans.

The district court awarded Wirtz actual and statutory damages under RESPA. The court concluded that Wirtz suffered $80 in actual damages from obtaining his bank records for 2012 to 2013, and that Specialized's actions constituted a "pattern or practice" of noncompliance that justified $2000 in statutory damages. Under the Minnesota statutes, the court awarded Wirtz damages of $2,137.22 based on lender fees included in the principal amount of his loan, attorney's fees of $45,468.50, and costs of $1,286.83. *See* Minn. Stat. § 58.18, subdiv. 1.

Specialized appeals and argues as a matter of law that it did not violate RESPA or the Minnesota Act. We review the district court's grant of summary judgment *de novo*. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017).

II.

A.

Specialized argues that it responded adequately to Wirtz's qualified written requests, so there can be no liability under RESPA or the Minnesota Act. The statute provides that after receipt of a qualified written request, the servicer must, "after conducting an investigation," provide a written explanation or clarification. 12 U.S.C. § 2605(e)(2)(B)-(C). Whether Specialized failed to comply with RESPA depends on what type of investigation the statute requires in response to a qualified written request.

-5-

The district court ruled that Specialized violated RESPA because the servicer "made minimal effort to investigate the error" that Wirtz identified in his account from August 2010. Specialized counters that its investigation could not have violated RESPA because the statute does not "impose a substantive obligation on a servicer to ensure that its investigation is sufficiently thorough."

RESPA mandates that the servicer must take certain actions "after conducting an investigation." The ordinary meaning of "investigation" is "[t]he action of investigating; the making of a search or inquiry; systematic examination; careful and minute research." 8 *Oxford English Dictionary* 47 (2d ed. 1989). Similarly, in legal terminology, the verb "investigate" means "[t]o inquire into (a matter) systematically." *Black's Law Dictionary* 953 (10th ed. 2014). These ordinary meanings are inconsistent with an interpretation of § 2605(e)(2)(B)-(C) that would allow a servicer to satisfy the statute with a cursory or superficial inquiry.

We also may consider a statute's stated purpose to illuminate the text, *see Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 192 (1995), and RESPA's declaration of purpose reinforces our understanding of the language of § 2605(e)(2). Congress enacted RESPA to provide consumers "with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). To serve this purpose, Congress required loan servicers to respond to inquiries from borrowers seeking information about their accounts or to correct accounting errors. § 2605(e). If loan servicers could respond to those inquires after conducting perfunctory examinations, then consumers would be unable to obtain "greater or more timely information." § 2601(a). "It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute—and, ultimately, correct—inaccurate information [regarding their loan accounts], Congress used the term 'investigation' to include superficial, *un*reasonable inquiries by [loan servicers]." *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430-31 (4th Cir. 2004). Given the ordinary meaning of "investigation" and the purpose of RESPA, we

conclude that § 2605(e)(2)(B)-(C) imposes a substantive obligation on mortgage loan servicers to conduct a reasonably thorough examination before responding to a borrower's qualified written request.

Specialized resists this conclusion and contends the statute "imposed mere procedural obligations to investigate and respond," because federal regulators did not establish a substantive obligation to investigate until January 2014. *See Wilson v. Bank of Am. N.A.*, 48 F. Supp. 3d 787, 804 (E.D. Pa. 2014). Effective January 2014, the Bureau of Consumer Financial Protection amended its Regulation X to require that mortgage loan servicers conduct a "reasonable investigation" in response to a qualified written request. *Regulation X*, 78 Fed. Reg. 10,696, 10,878 (Feb. 14, 2013) (codified at 12 C.F.R. § 1024.35(e)(1)(i)(B)). The addition of a new regulatory command, however, does not imply that the statute previously did not include one. In this case, we conclude that the new regulation simply reflects a requirement already dictated by the statutory text.

The undisputed facts show that Specialized failed to conduct a reasonable investigation of Wirtz's pre-June 2011 loan payment history. Wirtz's letter of November 8, 2013 requested the payment history for Wirtz's mortgage loan "from origination to present," and an explanation of why Specialized thought Wirtz's loan was past due when it began servicing the loan in June 2011. Specialized did not obtain, review, or provide the full payment history as Wirtz requested. Specialized merely referred back to its prior letter to the Minnesota Attorney General's office, which in turn discussed only the partial payment history beginning in June 2011. Because Specialized never provided the full loan payment history, Wirtz himself procured a copy of his loan payment history from 2002 and included that payment history with his December 27 letter. But in response to that letter, Specialized still did not address the pre-2011 loan payment history and instead discussed only payments beginning in November 2011.

Specialized then complains that the district court erroneously required it not only to conduct an investigation but also to correct the alleged error that Wirtz identified in his account history. The servicer cites the district court's statements that "if [Specialized] had investigated the request, it could have discovered and corrected the error," and that Specialized's "failure to investigate and correct the error violated RESPA." Specialized argues that RESPA does not require a loan servicer to correct an account if it adequately explains why it believes that the account is already correct. *See Starkey v. JPMorgan Chase Bank, N.A.*, No. 1:13-cv-694, 2013 WL 6669268, at *4 (S.D. Ohio Dec. 18, 2013).

The district court's ruling, however, did not rest on Specialized's failure to correct the alleged error. Rather, the district court ultimately concluded that Specialized violated RESPA because it "made minimal effort to investigate the error." Specialized's failure to obtain Wirtz's pre-2011 loan payment history and to review that history when Wirtz provided it establishes that the servicer did not conduct a reasonable investigation as required by RESPA. The district court correctly determined that Specialized failed to comply with § 2605(e)(2)(B)-(C).

The district court ruled that Specialized also violated RESPA by failing to provide the information that Wirtz requested about his loan history since origination. The statute requires that a loan servicer must provide the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." § 2605(e)(2)(C)(i). Specialized argues that the pre-2011 payment history requested by Wirtz was "unavailable," because Specialized "did not receive that information from Chase." That Specialized did not possess the pre-2011 payment history at the time of Wirtz's request, however, does not make that payment history unavailable if it could be obtained through reasonable investigation. Specialized simply needed to ask Chase for the earlier records. Specialized failed to comply with § 2605(e)(2)(C)(i) when it did not provide the pre-2011 payment history in response to Wirtz's request.

-8-

B.

1.

Specialized argues that even if it failed to comply with certain duties under RESPA, Wirtz failed to present a submissible claim because he did not show damages. Proof of actual damages is an essential element of a claim under RESPA. *See Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012). The only relief available under RESPA is an award of actual damages and "additional damages" in certain circumstances, so an assertion that a servicer breached a duty under RESPA without causing actual harm does not state a claim under the statute. *Accord Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013); *Molina v. Wash. Mut. Bank*, No. 09-CV-00894-IEG (AJB), 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (citing cases); *Ricotta v. Ocwen Loan Servicing, LLC*, No. 06-cv-01502-MSK-KLM, 2008 WL 516674, at *5 (D. Colo. Feb. 22, 2008).

We agree with Specialized that Wirtz failed to prove actual damages, because Specialized's failure to comply with RESPA did not cause Wirtz's alleged harm. When a loan servicer fails to comply with § 2605(e), the borrower is entitled to "any actual damages to the borrower *as a result of* the failure." § 2605(f)(1)(A) (emphasis added). Congress's use of the phrase "as a result of" dictates that "there must be a 'causal link' between the alleged violation and the damages." *Renfroe*, 822 F.3d at 1246.

Specialized's failures to comply with RESPA all involve the pre-2011 payment history. The servicer failed to comply with the statute by not obtaining and reviewing the pre-2011 payment history, and by not providing the pre-2011 payment history to Wirtz as requested. It is true that Wirtz, as a result of Specialized's failures, had to obtain a copy of the pre-2011 payment history from Chase himself. But Wirtz did not

claim that he paid any money for those records, and the district court did not award damages on that basis.

The district court's award of $80 in actual damages was based on Wirtz's expense to obtain a copy of his bank statements from January 16, 2012, through November 17, 2013. These records, however, relate to a separate dispute between Wirtz and Specialized over whether Wirtz failed to make loan payments in February 2012 and February 2013. Specialized's letter of December 9 properly asked Wirtz to provide "front and back of the cancelled checks evidencing that Chase received and processed payments from February 2012 and 2013." *See* 12 C.F.R. § 1024.35(e)(2). Wirtz eventually acknowledged that the records held by Chase showed possible missed payments in early 2012 and 2013; he then maintained that he made catch-up payments in May 2012 and at a later date after Specialized began servicing the loan in June 2013. Specialized complied with its duties under RESPA in responding to Wirtz's inquiries about payments in 2012 and 2013.

The bank records that Wirtz obtained for 2012 and 2013 were irrelevant to the dispute whether Wirtz's loan payments were past due before June 2011. Wirtz did not pay $80 for bank records from 2012 and 2013 "as a result of" Specialized's failure to investigate and provide information about the pre-2011 payment history. We therefore conclude that Wirtz did not submit sufficient evidence of actual damages under RESPA.

2.

Specialized also challenges the district court's award of statutory damages under RESPA. For failures to comply with § 2605(e), RESPA allows borrowers to recover actual damages and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." § 2605(f)(1)(B).

-10-

A borrower cannot recover "additional" damages under § 2605(f)(1)(B) without first recovering actual damages. "[A]dditional" means "[e]xisting in addition, coming by way of addition; added." 1 *Oxford English Dictionary* 144 (2d ed. 1989). For RESPA's statutory damages to be "additional," there must be other damages to which they are "added." Because Wirtz suffered no actual damages, the district court's award of statutory damages must be reversed. *See Renfroe*, 822 F.3d at 1247 n.4.

Wirtz relies on decisions under different statutes that allow the recovery of statutory damages without an award of actual damages. Decisions under the Fair Debt Collection Practices Act are inapposite because the text of that statute does not dictate that statutory damages must be in addition to actual damages. *See* 15 U.S.C. § 1640(a)(2)(A). The Ninth Circuit in *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982), did hold that the Truth in Lending Act allowed for "additional damages as the court may allow" even without actual damages. But the court did not explain how that conclusion could be reconciled with the term "additional," and *Baker* is not convincing authority on the meaning of RESPA. In our view, the plain language of § 2605(f)(1)(B) requires a borrower to recover actual damages before he can be eligible to recover "additional" statutory damages.

Alternatively, Wirtz failed to present sufficient evidence that Specialized engaged in a "pattern or practice of noncompliance" as required for damages under § 2605(f)(1)(B). The phrase "pattern or practice" appears in many federal statutes, and "the words reflect only their usual meaning." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.16 (1977). To show a pattern or practice, a plaintiff must show that noncompliance with the statute "was the company's standard operating procedure—the regular rather than the unusual practice." *Id.* at 336; *see Renfroe*, 822 F.3d at 1247 (discussing the meaning of "pattern or practice" in RESPA). Conduct that does not amount to a violation of RESPA may not be considered, because the

statute requires "a pattern or practice of noncompliance *with the requirements of this section*." § 2605(f)(1)(B) (emphasis added).

Wirtz did not produce evidence to support a finding of "pattern or practice" here. There was no evidence that Specialized failed to investigate and respond reasonably to qualified written requests from other borrowers. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d at 523. Even assuming that a servicer's activity with respect to a single borrower could establish a pattern or practice, the conduct here was insufficient to establish a standard operating procedure of noncompliance. The district court concluded that Specialized did not comply with RESPA in responding to letters from Wirtz dated November 8 and December 27. Wirtz concedes that two instances of noncompliance are not enough. *See Renfroe*, 822 F.3d at 1247. Although Wirtz sent a total of five letters to Specialized, three were dated within seventeen days and raised similar issues; Specialized made a single timely response. Wirtz sent two more letters that were similar to each other within six weeks, and Specialized responded to both. A borrower cannot manufacture a pattern or practice by sending multiple requests in quick succession involving the same subject matter.

Because Wirtz did not present evidence of damages resulting from Specialized's failures to comply with RESPA, he failed to establish an essential element of his claim under RESPA. We therefore reverse the district court's grant of summary judgment for Wirtz and remand with directions to enter judgment for Specialized on the RESPA claim.

C.

Wirtz brought a separate claim under the Minnesota Mortgage Originator and Servicer Licensing Act. The Minnesota Act provides that no servicer "shall . . . violate any provision of any . . . federal law regulating residential mortgage loans." Minn. Stat. § 58.13, subdiv. 1(a)(8). The district court ruled that because Specialized

-12-

violated RESPA, Wirtz was entitled to judgment under the Minnesota Act. On appeal, the parties barely mention the Minnesota Act and appear to assume that the federal and state claims rise or fall together. Because we reverse the judgment on Wirtz's claim under RESPA, and that judgment was the basis for the district court's ruling on the state-law claim, we also reverse the judgment on Wirtz's claim under the Minnesota Act and remand for further proceedings on that claim.

In the district court, Wirtz suggested briefly that the Minnesota Act provides a cause of action when a servicer "violate[s]" a federal law regulating mortgage loans, even when there is no federal cause of action. *See* R. Doc. 27, at 37-38, 38 n.138. The parties have not briefed the meaning of the state statute on appeal, and we decline to address what may be questions of first impression under Minnesota law at this juncture. *Cf. Bredlow v. CitiMortgate, Inc.*, No. 15-3087 (DWF/JJK), 2016 WL 310728, at \*7 (D. Minn. Jan. 26, 2016); *Winkler v. GMAC Mortg., LLC*, No. 12-46 (SRN/SER), 2012 WL 1883916, at \*4 (D. Minn. May 22, 2012).

\*       \*       \*

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Wirtz on his claims under RESPA and the Minnesota Mortgage Originator and Servicer Licensing Act. We remand with directions to enter judgment for Specialized on the RESPA claim and for further proceedings on the claim under the Minnesota Act.

_____