**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ERIC M. MUATHE,

    Plaintiff - Appellant,

v.

WELLS FARGO BANK, NA; MATT R.
HUBBARD; JEHAN K. MOORE;
MICHAEL L. ABRAMS; LATHROP
GAGE, LLP,

    Defendants - Appellees.

No. 19-3055
(D.C. No. 2:18-CV-02064-CM-TJJ)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Eric Muathe brought this action claiming the defendants violated the Real

Estate Settlement Procedures Act (RESPA) and the Fair Debt Collection Practices

Act (FDCPA) in connection with his application for a loan modification. The district

court dismissed his amended complaint for failure to state a claim. He appeals pro se

from the dismissal. We affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

Muathe relies on the district court's factual summary, which reads as follows:

Plaintiff is a defendant in a pending foreclosure action in the District Court of Crawford County, Kansas. On August 11, 2014, Wilmington Trust, N.A., as the current holder of plaintiff's mortgage, filed the Petition for Foreclosure of Mortgage. The petition alleges plaintiff failed to pay amounts due.

On July 11, 2016, plaintiff filed a Second Amended Answer and Counterclaim in the foreclosure action. Attorneys from defendant Lathrop Gage, LLP entered their appearance in the foreclosure action on behalf of Wilmington Trust. Defendants Jehan K. Moore and Michael L. Abrams, partners at Lathrop Gage, currently represent Wilmington Trust in the foreclosure action against plaintiff. Defendant Matt R. Hubbard was formerly a partner with Lathrop Gage and formerly represented Wilmington Trust in the foreclosure action.

In exhibits attached to plaintiff's amended complaint, it appears that around October 2016, plaintiff began communicating with defendant Hubbard regarding settlement options in the foreclosure action. After Hubbard confirmed that Wilmington Trust authorized him to communicate with plaintiff regarding settlement offers, plaintiff sent Hubbard a settlement offer, and Hubbard agreed to confer with his client. In March 2017, Hubbard informed plaintiff that Wilmington Trust declined his offer of settlement. Litigation continued in the foreclosure action throughout 2017.

In September 2017, defendant Moore emailed plaintiff to inform him that she was taking over the matter from Hubbard. She forwarded two letters from defendant Wells Fargo regarding plaintiff's request for mortgage assistance and requested plaintiff send any documentation and correspondence regarding the case to her attention. Wells Fargo is the loan servicer for plaintiff's mortgage. As the loan servicer, Wells Fargo performs services in connection with the mortgage loan on behalf of the owner of plaintiff's loan, including collecting loan payments, processing applications for loan modification, and commencing and managing foreclosure proceedings. Between September and December 2017, plaintiff and Moore communicated about documentation needed for plaintiff's requested loan modification. On December 19, 2017, Moore emailed plaintiff with the outstanding documentation needed for his request for mortgage assistance. She informed plaintiff that if the documents were not received by December 26, 2017, his request could not be completed.

Plaintiff responded to Moore's email and inquired as to who was requesting the information. Plaintiff expressed his concerns that the requests were not coming directly from Wells Fargo, the loan servicer, and "objected" to Moore's involvement as a "conduit for communications with the servicer." Moore responded that Wells Fargo was requesting the information, and that as Wells Fargo's attorney, she was acting on behalf of them to collect the documentation. Moore followed up with plaintiff on January 3, 2018 regarding the outstanding documentation, and on January 20, 2018, a Home Preservation Specialist with Wells Fargo sent plaintiff a letter informing him that they were unable to offer any mortgage assistance options because of the incomplete application.

After filing unsuccessful complaints with the Consumer Financial Protection Bureau and the Kansas Office of the Disciplinary Administrator, plaintiff filed this pro se action on February 9, 2018 alleging misconduct in connection with his application for a loan modification.

R. at 284-86 (brackets, citation, and some internal quotation marks omitted).

## ANALYSIS

We review de novo the district court's dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 520 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 521 (internal quotation marks omitted). Because Muathe proceeds pro se, we liberally construe his complaint and other filings, but we will not act as his advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

3

**I.  Matters Outside the Pleadings**

The defendants attached documents outside the pleadings to their motion to dismiss.  In his opposition to the motion, Muathe argued the court was required either to ignore those documents or to treat the motion as one for summary judgment under Fed. R. Civ. P. 56 and to give him a "reasonable opportunity to present all material made pertinent to [the] motion by Rule 56."  R. at 253 (citing Fed. R. Civ. P. 12(d)).  When the district court dismissed his complaint, it expressly declined to consider the attached documents:

> [I]n his response to the motion to dismiss, plaintiff objected to the inclusion of various documents defendants attached to their motion.  The court *did not consider these documents when reaching its decision*, but would mention that ordinarily a court may take judicial notice of its own files and records, proceedings in other courts, and facts which are a matter of public record.

R. at 293 (emphasis added).

On appeal Muathe simply reiterates word-for-word the argument he made to the district court concerning this issue *before* it ruled on the motion to dismiss.  *Compare* Aplt. Opening Br. at 2-3, *with* R. at 253-54.  He does not acknowledge or refute the district court's statement that it did not consider the documents in reaching its decision.  He has therefore waived any argument on this point.  *See Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (if the appellant's opening brief does not challenge the district court's reasoning on a point, we need not address the argument).

## II. Reasonable Time to Complete Application

 "A loss mitigation application is . . . a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1006 (11th Cir. 2016) (per curiam). The loan servicer's review of such applications, including incomplete applications, is governed by the RESPA Mortgage Servicing Rules in Regulation X. *See* 12 C.F.R. § 1024.41 (2017). Muathe argues that the defendants violated RESPA by failing to provide him with a reasonable amount of time to complete his loss mitigation application and by failing to provide him with a final response deadline date for the documentation.

Under the loss mitigation procedures, if the application is incomplete, the servicer must notify the borrower concerning the additional documents required and the date for submitting them. *Id.* § 1024.41(b)(2)(i)(B). This date must be "reasonable." *Id.* § 1024.41(b)(2)(ii). The Consumer Financial Protection Bureau's (CFPB) Official Staff Commentary on Regulation X (Commentary) concerning § 1024.41(b)(2)(ii) notes that "[t]hirty days is generally reasonable." 12 CFR 1024, suppl. I, § 41(b)(2)(ii) (Apr. 19, 2018), cmt. 1.[1] In addition, the Commentary

---

[1] Muathe also cites comment 2, which requires that the deadline be no *later* than certain milestones. These milestones *shorten* the available deadline for submitting documents to complete an application. Some of them are tied to the date of a foreclosure sale, and Muathe points out that the sale has been stayed in his case. But comment 2 is based on "the earliest of" the milestone dates, one of which is not directly related to a foreclosure sale date: a date 120 days after the borrower's delinquency. *Id.* Muathe fails to show that comment 2 supports his RESPA claim.

5

provides that a reasonable date "must never be less than seven days from the date on which the servicer provides the written notice." *Id.* cmt. 3.

We agree with the district court that Wells Fargo provided Muathe with a reasonable amount of time to complete his application and did not deny his application without providing him with a final submission deadline. Given the considerable previous delays in receiving the documentation to support Muathe's application, the initial seven-day deadline was reasonable, particularly given that when Muathe failed to meet that deadline, Wells Fargo gave him additional time and he still failed to comply. Moreover, Wells Fargo did not affirmatively deny the application, but "simply informed [him] it could not offer him any mortgage assistance options because he had not submitted all the required documentation." R. at 290. Accordingly, the district court properly dismissed this RESPA claim.

Muathe also argued in district court that the defendants should have offered him a loss mitigation option based on his incomplete application. To the extent he renews this argument on appeal, we agree with the district court that under the regulations a servicer has *discretion* to evaluate an incomplete application but is not *required* to do so. *See* 12 C.F.R. § 1024.41(c)(2)(ii). Muathe fails to show that Wells Fargo's failure to exercise its discretion in his favor gave rise to a cause of action under RESPA.

### III. Timely Loss Mitigation/Continuity of Contact

Muathe next claims he was "repeatedly denied immediate loss mitigation options when [he] requested them through Defendant Hubbard" and was "denied

direct access to Wells Fargo," the servicer of his loan. Aplt. Opening Br. at 5. Similarly, he asserts that Wells Fargo failed to assign him personnel that could provide "[c]ontinuity of contact," including assistance with available loss mitigation options. *Id.* (internal quotation marks omitted). To the extent these claims rely on the servicing obligations described in 12 C.F.R. § 1024.40, Muathe fails to challenge the district court's conclusion that there is no private cause of action to enforce § 1024.40. *See, e.g.*, *Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859, 862, 867-71 (E.D. Mich. 2015) (adopting magistrate judge's report and recommendation that analyzed legislative and regulatory history and concluded § 1024.40 does not create a private cause of action). Nor does Muathe explain how 12 C.F.R. § 1024.38, which concerns mortgage servicing requirements, creates such a private right of action.

Muathe further complains that although he requested a loss mitigation package from Hubbard as far back as October 17, 2016, *see* R. at 143, his requests went unanswered until nearly a year later, when defendant Moore began working with him to pursue loan modification. He contends that this delay violated Wells Fargo's obligations to provide him with timely assistance with loan modification. But as the documents attached to Muathe's amended complaint reveal, his correspondence with Hubbard concerned the possibility of settling the foreclosure action, not a loss mitigation package. And, although Muathe said in his communications regarding settlement that he was "willing to consider a reworked loan agreement," *id.* at 150 (internal quotation marks omitted), there is no indication he requested a loss

7

mitigation package from or attempted to submit a loss mitigation application through Hubbard, *see id.* at 127, 129-30, 147-52; *see also* Commentary, 12 CFR 1024, suppl. I, § 41(b)(1), cmt. 3 (providing examples of inquiries that are *not* applications for loss mitigation).[2]  Under these circumstances, Muathe has failed to plead facts that plausibly show the defendants violated RESPA through their alleged failure to assist him in pursuing loan modification during settlement negotiations through Hubbard.

## IV.  Alleged Factual Errors

Finally, Muathe mentions several alleged factual and legal errors in the district court's decision.  *See* Aplt. Opening Br. at 6-7.  For each alleged error he supplies a single sentence stating that the district court erred.  He then provides the page and paragraph numbers of the challenged ruling.  These contentions, to the extent intended as freestanding arguments, are insufficiently developed for appellate consideration, and we therefore decline to address them.  *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider

---

[2]  The thread on Muathe's March 3, 2017 email to Hubbard regarding settlement referred to his previous alleged request for "direct access to someone on [Wells Fargo's] end who would discuss settlement/loss mitigation options" and noted that unspecified "[f]ederal laws[] and regulations[] require[] [sic] you and [Wells Fargo] to act differently, and promptly."  R. at 150.  But there is no indication in the portions of the record Muathe cites that his prior discussions with Hubbard had involved "loss mitigation options" as opposed to settlement.  Hubbard responded that he had communicated Muathe's offer of settlement to Wells Fargo and that the bank had declined the offer and was moving forward with the foreclosure case.  Taken in context, Muathe's equivocal statements to Hubbard cannot be considered an application for loss mitigation under RESPA.

arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

## CONCLUSION

We affirm the district court's dismissal. Muathe's application to proceed in forma pauperis is granted.

<div style="margin-left: 50%;">

Entered for the Court


Carolyn B. McHugh
Circuit Judge

</div>