[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11131
_____

D.C. Docket No. 0:15-cv-62511-WPD

LORIS B. RANGER,
GORDON GEORGE,

                                                            Plaintiffs - Appellants,

versus

WELLS FARGO BANK N.A.,
a foreign corporation,
d.b.a. America's Servicing Company,

                                                            Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 11, 2018)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and UNGARO,[*] District
Judge.

_____

[*] The Honorable Ursula Ungaro, United States District Judge for the Southern District of
Florida, sitting by designation.

PER CURIAM:

Plaintiffs Loris B. Ranger and George Gordon seek to recover damages from Wells Fargo Bank, N.A. ("Wells Fargo"), under the Real Estate Settlement Procedures Act ("RESPA") and Florida law. The parties' dispute stems from whether Wells Fargo had erroneously concluded that Plaintiffs had failed to pay their home mortgage and subsequently neglected to correct that error. The district court dismissed all of Plaintiffs' claims. After careful consideration and for the reasons that follow, we affirm in part and reverse in part.

## I.[1]

In 2005, Plaintiffs took out a $550,000 mortgage to buy a house in Miramar, Florida. Wells Fargo acted as the servicer of Plaintiffs' mortgage, and HSBC Bank USA, N.A., ("HSBC") owns Plaintiffs' mortgage.

Seven years after Plaintiffs took out their mortgage, HSBC commenced a foreclosure suit against them in state court. Wells Fargo "caused" HSBC to file the foreclosure suit and verified the complaint in that action, which alleged that Plaintiffs had been derelict in making their monthly mortgage payments since January 1, 2012. At that time, Wells Fargo placed every mortgage payment it

---

[1] For purposes of our review, we accept as true the allegations in the operative complaint and construe them in the light most favorable to Plaintiffs, since Plaintiffs challenge the district court's grant of Wells Fargo's motion to dismiss. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016).

received from Plaintiffs during the pendency of the foreclosure suit into a "suspense account," rather than applying them to the mortgage.

On October 29, 2014, approximately two years after Wells Fargo "caused" the foreclosure suit to be filed, Plaintiffs sent Wells Fargo the first of two Qualified Written Requests (the "2014 QWR"). Invoking 12 C.F.R. § 1024.35(e)—so-called Regulation X of RESPA—the 2014 QWR contended that the allegations in the foreclosure action that they had neglected to pay their mortgage since January 1, 2012, were "absolutely not true" because Plaintiffs have "continued to make payments throughout the year 2012 and well into 2013 . . . ."

Once Plaintiffs invoked Regulation X, Wells Fargo was obligated to investigate the errors alleged in the 2014 QWR. At the conclusion of its investigation, 12 C.F.R. § 1024.35(e) afforded Wells Fargo two options: correct the purported error or explain to Plaintiffs why they were wrong. Wells Fargo attempted to take the latter path, insisting to Plaintiffs that the foreclosure suit was "valid" because Plaintiffs had missed mortgage payments, the payments they had subsequently made failed to bring the loan current, and, accordingly, Wells Fargo properly accelerated the mortgage.

But the state court foreclosure trial did not agree with Wells Fargo's response. Instead, on April 21, 2015, the state court ruled that HSBC had failed to prove it was entitled to foreclose on Plaintiffs' house.

3

The story, however, did not end there.  Around October 5, 2015—just six months after the foreclosure trial ended—Wells Fargo sent Plaintiffs a letter that essentially recycled the allegations it had made in the foreclosure suit.  The letter asserted that Plaintiffs were in default and owed $104,997.39—a sum that appeared to be the same as what Wells Fargo claimed Plaintiffs owed in the prior foreclosure action.

In response, on October 20, 2015, Plaintiffs sent their second QWR (the "2015 QWR"), which alerted Wells Fargo to the same perceived error Plaintiffs had claimed in the 2014 QWR, and gave Wells Fargo "a second opportunity to investigate and correct the existing errors."  The 2015 QWR referenced Plaintiffs' victory in the foreclosure suit and asserted that the same servicing error must still be plaguing Plaintiffs' account, given the similarity between Wells Fargo's letter and the allegations made in the foreclosure suit.

Two days after Plaintiffs sent the 2015 QWR, they filed this suit.

Nevertheless, Wells Fargo eventually responded to Plaintiffs' 2015 QWR.  In that response, Wells Fargo told Plaintiffs that it had investigated Plaintiffs' assertions, but once again, it concluded that Plaintiffs' account contained no errors.  Thus, according to Wells Fargo, Plaintiffs' loan was past due for over two years.

Based on these allegations, Plaintiffs' Amended Complaint asserts four claims.  First, Plaintiffs make a claim under the Florida Consumer Collection

Practices Act ("FCCPA").  Second, in Plaintiffs' lone federal cause of action, Plaintiffs contend under RESPA that Wells Fargo violated 12 C.F.R. 1026.36(c) twice because, had Wells Fargo conducted a reasonable investigation into the 2014 and 2015 QWRs, it would have found Plaintiffs' account had errors.  Third, as a tagalong to Plaintiffs' RESPA claim, Plaintiffs assert that Wells Fargo was negligent *per se*.  In other words, Plaintiffs allege that by violating 12 C.F.R. 1026.36(c) of RESPA, Wells Fargo negligently investigated the 2014 and 2015 QWRs.

Fourth and finally, Plaintiffs assert a claim for conversion under Florida law. Plaintiffs' theory is that 12 C.F.R. 1026.36(c) obligated Wells Fargo to keep their mortgage payments "intact" and ensure that HSBC applied those payments to their account.  Instead of doing that, Wells Fargo put Plaintiffs' payments into a suspense account, thereby allowing Wells Fargo to invest these payments and potentially profit from them.  According to Plaintiffs, this cost them significantly because it inflated the principal, fees, and the interest due on their mortgage.

Wells Fargo moved to dismiss each of Plaintiffs' claims on December 15, 2016.  The district court found that Plaintiffs had failed to adequately allege any of their claims, except for their claim under the FCCPA.  Consequently, the court dismissed Plaintiffs' RESPA, negligence *per se*, and conversion claims with prejudice.

More specifically, the court concluded that Plaintiffs' RESPA claim failed because Plaintiffs had not alleged damages, and to the extent they had, they had not asserted a causal connection between Wells Fargo's responses to the QWRs and Plaintiffs' asserted damages. The district court also reasoned that Plaintiffs could not recover attorney's fees incurred from the foreclosure action because, taking judicial notice of the foreclosure proceedings in state court, Plaintiffs had recovered "full settlement" of those fees and found it "troubling" that Plaintiffs were attempting to obtain a double-recovery of those fees. Because the district court found that Plaintiffs' RESPA claim failed, it also dismissed their negligence *per se* claim.

As for Plaintiffs' conversion claim, the district court determined that Plaintiffs had failed to allege a demand for return of the money paid to Wells Fargo, or that Wells Fargo had refused such a demand. Finally, the district court ordered Plaintiffs to show cause for why it should exercise supplemental jurisdiction over their claim under the FCCPA.

After the district court denied Plaintiffs motion for reconsideration, it dismissed Plaintiffs' FCCPA claim without prejudice so that Plaintiffs could file it in state court. Plaintiffs now appeal.

6

## II.

We review de novo a district court's grant of a motion to dismiss. *Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1243 (11th Cir. 2016) (citing *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008)).

To survive a motion to dismiss, a pleading must set out facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Consequently, a plaintiff must imbue its pleading with "enough heft to show that the pleader is entitled to relief." *Id.* at 557. And plausibility is the test for that heft: The "well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). To do so, the complaint must contain "more than labels and conclusions," *Twombly*, 550 U.S. at 555, and enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While Plaintiffs receive the benefit of reasonable factual inferences, "'unwarranted deductions of fact' are not admitted as true." *Aldana v. Del Monte Fresh Produce, N.A. Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, we do not credit bare legal conclusions. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

7

## III.

Plaintiffs challenge the district court's dismissal of their RESPA, negligence *per se*, and conversion claims.  We address each in turn below.

### A. Plaintiffs provided just enough heft to salvage some of their RESPA theories

"RESPA is a consumer protection statute that imposes a duty on servicers of mortgage loans to acknowledge and respond to inquiries from borrowers."  *Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 918–19 (11th Cir. 2017).  Under RESPA, servicers must comply with the obligations specified in Regulation X, 12 U.S.C. § 2605.  *See* 12 U.S.C. § 2605(k)(1).

Section 2605 provides a mechanism for borrowers to write to their mortgage servicers to seek information about their mortgages and object to perceived errors in their account.  It also requires servicers to respond to a borrower's qualified written request (QWR).  A QWR is a "written correspondence" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either (a) asserts an error in the borrower's account or (b) requests information related to the servicing of the borrower's account.  12 U.S.C. § 2605(e)(1).

Once a servicer receives a borrower's QWR, it must "provide a written response acknowledging receipt of the correspondence within 5 [business] days." § 2605(e)(1)(A).  Then, within 30 business days, the servicer must (1) correct the asserted error; (2) explain why it believes the account isn't in error; (3) provide the

8

requested information; or (4) explain why the requested information is unavailable. § 2605(e)(2).

If the servicer's response or investigation falls short, borrowers can file suit. But not all RESPA violations are actionable. Two key limitations confine RESPA's reach, both of which are relevant here. First, borrowers must show "actual damages" from a servicer's failure to comply. *See Renfroe*, 822 F.3d ay 1246.[2]  And second, borrowers must plausibly allege a "causal link" between the servicer's violation and the borrower's alleged damages. *Id.*  (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages") (quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001)).

Plaintiffs argue that their Amended Complaint asserted five types of damages under RESPA that were caused by Wells Fargo's failure to adequately respond to their QWRs:  emotional distress, attorney's fees from the foreclosure litigation in state court, attorney's fees from sending the 2015 QWR, improper finance and interest charges, and damage to their credit.  They further assert that they alleged sufficient facts about how those damages were linked to Wells Fargo's RESPA violations.

---

[2] Borrowers may also recover statutory damages of up to $2,000 per violation if they can show the violation was part of a "pattern or practice of noncompliance" with RESPA's requirements.  § 2605(f)(1)(B).  However, this portion of RESPA is not at issue in this appeal.

As explained below, we conclude that Plaintiffs alleged enough facts to connect three of their damage theories to Wells Fargo's RESPA violations: emotional distress, higher mortgage costs and fees, and damage to their credit. Though the allegations concerning damages in the Amended Complaint could have been more plentiful, at the motion-to-dismiss stage, we conclude that they allege enough to "nudge" Plaintiffs' RESPA claim past Wells Fargo's motion to dismiss.

### 1. Emotional Distress

Plaintiffs first argue that they specifically alleged they suffered "emotional distress," and they were entitled to a reasonable inference that this distress stemmed from their ongoing struggle with Wells Fargo. In response, Wells Fargo contends that emotional distress damages are not cognizable under RESPA, and even if they are, Plaintiffs have failed to allege how their emotional distress is connected to Wells Fargo's RESPA violations.

Because RESPA is a consumer-protection statute, we must construe "it liberally in order to best serve Congress's intent." *Renfroe*, 822 F.3d at 1244. Construing RESPA's unqualified language of "actual damages" broadly, and based on the interpretations of "actual damages" in other consumer-protection statutes that are remedial in nature," we see no reason why a plaintiff cannot recover non-pecuniary damages, such as emotional distress, under RESPA. *See In Catalan v.*

10

*GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) (assuming that emotional-distress damages are recoverable under RESPA).

Here, a reasonable inference from the Amended Complaint plausibly links Plaintiffs' allegation that they suffered emotional distress to Wells Fargo's violations of RESPA. That's because Plaintiffs allege that they experienced emotional distress and that it was upsetting for Wells Fargo to insist upon pressing forward with the foreclosure, even after the 2014 QWR, even after the state court dismissed the foreclosure suit, and even after Plaintiffs sent the 2015 QWR.

Moreover, the thrust of Plaintiffs' allegations is that all of their emotional distress could have been avoided had Wells Fargo heeded their requests to correct the alleged error that they had failed to pay their mortgage. Of course, it would have been better if Plaintiffs had alleged more details about how they suffered emotional distress. But construing Plaintiffs' allegations in the light most favorable to them and affording them all reasonable inferences, we find that Plaintiffs have adequately alleged that their emotional distress was causally linked to Wells Fargo's RESPA violations.

### 2. Plaintiffs' payment of higher mortgage fees and damage to their credit

Taking the other two adequately pled RESPA theories together, Plaintiffs have also alleged enough to link (1) their payment of more fees and interest and (2) damage to their credit score to Wells Fargo's RESPA violations. In *Renfroe*, we

11

held that the plaintiff could establish actual damages because he alleged that his servicer failed to respond to the plaintiff's QWR and did not issue refunds of erroneous charges. *See* 822 F.3d at 1246. Therefore, as long as the plaintiff "plausibly alleges that a servicer violated its statutory obligations and as a result the plaintiff did not receive a refund of erroneous charges, she has been cognizably harmed." *Id.* at 1246–47; *see also Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 720 (6th Cir. 2013) ("Marais's complaint . . . alleged that [d]ue to these violations, Defendant is liable . . . equaling the amount of money Chase converted plus interest. A reasonable inference arising from these allegations is that because Chase (undisputedly) failed to correct or investigate the misapplied payments, Marais paid interest on a higher principal balance than she should have.") (internal quotation marks omitted).

Here, Wells Fargo does not contest that it violated its statutory obligations under RESPA. And Plaintiffs alleged that they paid higher fees on their mortgage and that their credit score was deflated, causing them to lose "access to credit," because Wells Fargo—as a consequence of failing to discharge its RESPA obligations—declined to correct the account errors and apply Plaintiffs' mortgage payments to the outstanding mortgage balance. *See Renfroe*, 822 F.3d at 1246; *Marais*, 736 F.3d at 721 (holding that plaintiffs could recover for damages relating

12

to credit misreporting).  Thus, Plaintiffs have alleged enough to withstand Wells Fargo's motion to dismiss on this aspect of their RESPA claim.[3]

### 3.  Attorney's fees

That is the extent of Plaintiffs' adequately pled RESPA theories.  Taking their pursuit of attorney's fees from the 2014 QWR and the foreclosure suit first, Plaintiffs concede they recovered all the attorney's fees they could have in the state action, and despite their dissatisfaction with the amount of those fees, an appeal to the state appellate court would have been "useless since Florida law does ordinarily not allow for a prevailing party to recover all of the attorneys' [fees] incurred."  Plaintiffs also concede that their pleadings were silent about whether they were seeking to recover the same attorney's fees they had already recovered in the state-court litigation.  Nevertheless, Plaintiffs now contend they were entitled to a reasonable inference that they were seeking only the attorney's fees from the state-court action that they had not recovered.

Like the district court, we too are "troubled" by Plaintiffs' attempt to take a second bite at the apple.  Rather than registering any dissatisfaction with the amount

---

[3] We note that it is unsettled whether bare allegations of damage to the plaintiff's credit score are sufficient to state a claim.  *See*, *e.g.*, *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1373 (S.D. Fla. 2009) (holding that damage to credit is speculative without, for example, allegations of lost financing opportunities), *aff'd*, 398 F. App'x 467 (11th Cir. 2010).  However, we need not decide this issue because here plaintiffs also assert that the hit they took to their credit score resulted in their lost "access to credit."  At least at the motion-to-dismiss stage, this allegation suffices, as it asserts more than a simple reduced credit score.

of attorney's fees they recovered for fending off the foreclosure suit in state court through an appeal in the state system, Plaintiffs want use their RESPA claim as a vehicle to do that. That cannot be cognizable under RESPA for at least two reasons.

As an initial matter, Plaintiffs' contention that they seek some undefined portion of the attorney's fees from the state-court foreclosure suit is nowhere in the Amended Complaint. Instead, Plaintiffs seek recovery of all fees "related to legal services rendered in connection with the foreclosure lawsuit . . . ." But we assume the truth of all well-pled allegations, so Plaintiffs' belated contentions that they are not seeking a double recovery are insufficient since they are contradicted by the Amended Complaint.

In all events, the distinction Plaintiffs try to make is one without a difference. No matter what, if Plaintiffs were dissatisfied with their recovery in state court, they had to appeal that through the state system. *See May v. Morgan Cty. Ga.*, 878 F.3d 1001, 1004 (11th Cir. 2017) ("[F]ederal district courts and courts of appeals do not have jurisdiction to review state court decisions."); *see also* 28 U.S.C. § 1257. Having elected to pursue attorney's fees in state court and then decided not to pursue an appeal of the attorney's fees in state court, Plaintiffs may not seek to supplement those attorney's fees in federal court.[4]

---

[4] The problems with Plaintiffs' suggested approach are magnified upon any close inspection. For example, under RESPA, Plaintiffs would be unable to recover attorney's fees that they incurred in defending the foreclosure suit from September 5, 2012, to December 9, 2014, the

14

Turning to Plaintiffs' damages allegedly stemming from Wells Fargo's response to the 2015 QWR, Plaintiffs argue that the costs they are entitled to arising out of their 2015 QWR are "modest" because they relate to attorney's fees and the "postage cost" of sending that second letter. Plaintiffs, however, recognize that this Court has refused to allow plaintiffs to recover costs associated with sending a QWR because sending the QWR occurs before defendants' response. But Plaintiffs argue that their case is different because the 2015 QWR was really just a follow-up to their 2014 QWR.

Whatever the merits of Plaintiffs' theory, it fails for a more basic reason: Plaintiffs jumped the gun. RESPA requires the servicer to respond to a QWR within thirty days after receiving it. *See* 12 U.S.C. § 2605(e)(2). Because Plaintiffs commenced this action just two days after sending Wells Fargo the 2015 QWR, without affording them the opportunity to respond, Plaintiffs may not recover damages relating to sending the 2015 QWR.

---

date upon which Wells Fargo responded to the 2014 QWR. *See Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001); *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 983 (11th Cir. 2017) ("A cost that is incurred whether or not the servicer complies with its obligations is not a cost that is caused by, or 'a result of,' the failure to comply."). Plaintiffs offer no method for how the court could separate the attorney's fees they were awarded in the state court and apportion them as they relate to the period after Wells Fargo's response to the 2014 QWR. And because the period between Wells Fargo's response and the state court's dismissal of the foreclosure suit was relatively small compared to the life of the foreclosure suit (four months versus almost three years), the only reasonable inference is that Plaintiffs recovered all the fees they could have in state court.

## B. Negligence *per se*

The parties agree that Plaintiffs' negligence *per se* claim rises and falls alongside Plaintiffs' RESPA claim.  It is impossible to see how they could disagree since Plaintiffs' sole negligence theory is that Wells Fargo violated RESPA by conducting an unreasonable investigation.

As set forth above, Plaintiffs have stated a claim under RESPA.  Therefore, their negligence *per se* claim must survive the motion to dismiss as well.

## C. Conversion

In a bid to save their conversion claim, Plaintiffs argue that their allegations that Wells Fargo "lawfully obtained the money" they sent for purposes of paying their mortgage, but that it "unlawfully directed those payments to a suspense account where they generated investment income for Wells Fargo's benefit" are sufficient to establish a claim for conversion.  In other words, Plaintiffs contend that Florida law does not obligate them to allege they demanded Wells Fargo return the money because Wells Fargo's transfer of the money into the suspense account was unlawful.  Alternatively, Plaintiffs argue if these allegations are insufficient, the district court erred in dismissing their conversion claim with prejudice.

Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time.  *Shelby Mut. Ins. Co. v. Crain Press, Inc.*, 481 So. 2d 501, 503 (Fla. 2d DCA 1985); *see also Marine Transp. Servs. Sea-Barge*

16

*Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1140 (11th Cir. 1994) ("In Florida, the tort of conversion is an unauthorized act which deprives another of his property permanently for an indefinite time.")  "A conversion occurs when a person who has a right to possession of property demands the property's return and the demand is not or cannot be met." *Id.*

Before a conversion can occur, a party that was previously in rightful possession of another party's funds must be informed by the other party that: "1) continued possession of the funds is no longer permitted; 2) a demand for return of the funds is necessary; and 3) the party holding the funds must fail to comply with the demand."  *Black Bus. Inv. Fund of Cent. Fla., Inc. v. Fla. Dep't of Econ. Opportunity*, 178 So. 3d 931, 937 (Fla. 1st DCA 2015).  Thus, while a plaintiff need not always allege a demand, "[i]f the original taking is lawful, the withholding being the wrongful element, a demand is necessary . . . ." *Mullenmaster v. Newbern*, 679 So. 2d 1186, 1186 (Fla. 4th DCA 1996).

Here, Wells Fargo's failure to apply the payments to Plaintiffs' account did not constitute conversion.  As Plaintiffs allege, Wells Fargo lawfully came into possession of the payments because Plaintiffs made those payments to satisfy their mortgage.  Thus, Plaintiffs needed to allege that they asked Wells Fargo to return the money.  But they have not.  And they make no suggestion that they could cure this pleading failure. *See, e.g., Almanza v. United Airlines, Inc.*, 851 F.3d 1060,

17

1075 (11th Cir. 2017) ("Perhaps Plaintiffs could argue their way out of futility if, on appeal, they explained how they could cure the faults in the proposed amended complaint. But Plaintiffs' briefing . . . did not indicate how they could better plead [their claim], so we cannot find error in the district court's dismissal with prejudice on that basis.") (internal citation omitted).  Accordingly, the district court's dismissal of Plaintiffs' claim with prejudice was warranted.

## V.

For the foregoing reasons, we reverse the district court's dismissal of Plaintiffs' RESPA and negligence per se claims.  We affirm the district court's dismissal of Plaintiffs' conversion claim.

**REVERSED IN PART, AFFIRMED IN PART.**